## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

|
**UNITED STATES OF AMERICA** |
|
**v.** | **CRIMINAL No. 11-10014-DPW**
|
**MATTHEW KUC** |
           **Defendant** |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS WARRANT SEARCH OF DEFENDANT'S HOME

The Court should deny Defendant Matthew Kuc's motion to suppress the evidence and fruits of a search conducted at his home pursuant to a search warrant.  Kuc argues that the warrant was unconstitutionally general and overbroad in violation of the Fourth Amendment, and that the warrant was so facially deficient that the executing officer could not have presumed it to be valid, and thus the search is not protected by the good-faith exception to the exclusionary rule outlined in *United States v. Leon*, 468 U.S. 897 (1984).

Kuc is incorrect.  The warrant was sufficiently particular to meet the requirements of the Fourth Amendment.  And even were the Court were to find the warrant flawed, the evidence should not be excluded because the *Leon* good-faith exception applies.

### BACKGROUND

On December 10, 2010, United States Magistrate Judge Leo T. Sorokin issued a search warrant for 36 Laurelwood Drive, North Attleboro, Massachusetts ("Target Premises"), which was both the defendant's residence and the location from which he conducted his eBay store, an

online venture called "totalassetrecovery" ("the eBay store").[1]

### *The Investigation*

In the affidavit submitted in support of the warrant application, FBI Special Agent Kenneth C. Heitkamp detailed the results of a joint FBI/IRS/North Attleboro Police Department criminal investigation involving Kuc's scheme to defraud various computer companies from 2005 through 2010. (Heitkamp Aff. ¶ 1–3.)  The affidavit alleged that Kuc used various aliases and shipping addresses to fraudulently obtain computer components from Dell, Hewlett-Packard, Lenovo, and 3COM; that Kuc sold these components through his eBay store; and that he used the Target Premises to conduct the fraud and ship components to customers.  (*Id.* ¶¶ 8-9.)  Kuc obtained the computer components by contacting computer companies, representing that he owned or was authorized to service certain computer parts that were damaged, and requesting warranty replacement components.[2] (*Id.* ¶ 9.)  The parts that Kuc said were damaged actually belonged to other business or individuals that were not connected to Kuc in any capacity.  Kuc instructed the computer companies to ship the replacement parts to one of three addresses: the Target Premises, a U.P.S. mailbox in Rhode Island, or a computer company in Attleboro, Massachusetts.  (*Id.*)  To avoid the companies' natural suspicion of repeatedly shipping replacement parts to these three addresses, Kuc also used slight variations of the addresses that were different enough to pass through the computer companies' security screening processes, but

---

[1]An eBay store is a special part of eBay where a seller can display all of the items for sale in one location.  Through the eBay store, the seller can also tell customers more about his business through his own customized web-page. (Heitkamp Aff. ¶ 25.)

[2]Agent Heitkamp's affidavit provides a detailed description of the mechanics of Kuc's scheme.  (See Heitkamp Aff. ¶¶ 10-17.)

close enough to the real addresses that the replacement parts would be delivered to the correct locations. (Heitkamp Aff. ¶¶ 20, 28.)  To also avoid the companies' natural suspicion of repeatedly shipping replacement parts to the same person, Kuc used an array of aliases, including variations of his own name.  (*Id.*)  The companies fell for the ruse and delivered the replacement parts, whereupon Kuc sold them through the eBay store. (*Id.* ¶ 9.)  Kuc did not return defective components, or instead returned components that did not match the components given to him or had the serial number scratched off.  (Heitkamp Aff. ¶ 24.)

In December 2009, the North Attleboro Police Department met with two investigators from 3COM, one of the computer companies that Kuc had defrauded.  (Heitkamp Aff. ¶ 24.)  The 3COM representatives told police about Kuc's scheme.  (*Id.*)  The 3COM investigators said that they discovered an eBay store named "totalassetrecovery" that sold 3COM components that matched components 3COM had sent Kuc or one of his aliases. (Heitkamp Aff. ¶¶ 25, 26.)  In March 2010, Agent Heitkamp reviewed a list of totalassetrecovery's computer parts for sale and saw that it included parts manufactured by Hewlett-Packard, 3COM, Dell and Lenovo.[3] (Heitkamp Aff. ¶ 27.)  On April 29, 2010, an FBI undercover employee ("UC") purchased three Dell external storage devices from totalassetrecovery.  (Heitkamp Aff. ¶ 29.)  The receipt for the purchase listed totalassetrecovery's email address as nu3ro@yahoo.com, which, according to Yahoo!, had been Kuc's email address since 1999. (*Id.*).  The parts were delivered in boxes' whose shipping labels stated that they had been shipped by Kuc at the Target Premises.  (*Id.*)

---

[3]  The eBay store also sold components manufactured by IBM.  When contacted, IBM reported that it had no dealings with Kuc, any of his addresses, or any of his known aliases. (Heitkamp Aff.¶ 27.)

eBay's records indicated that totalassetrecovery was registered to "Matthew J. Cook"[4] at the

Target Premises.[5]  (Heitkamp Aff. ¶ 32.)  Totalassetrecovery's PayPal[6] records were in Kuc's

name, Kuc's Social Security number, Kuc's email account (nu3ro@yahoo.com), and Kuc's

telephone numbers.  (Heitkamp Aff. ¶ 33.)

### *The Warrant*

The search warrant incorporated an Attachment B that listed the Items to be Seized.  This

attachment listed the statutory violations and specific categories of items to be seized,

specifically:

> "A.    All records, in whatever form, and tangible objects that constitute evidence, fruits,
> and instrumentalities of violations of 18 U.S.C. §§ 1343 (wire fraud), 2314
> (interstate transportation of stolen property), 2315 (storage and sale of stolen
> property in interstate commerce), and 2 (aiding and abetting), including, without
> limitation:
>
> > 1.    Records and tangible objects relating to the purchase, repair, sale, or
> > shipping of computer hardware;
> >
> > 2.    Records and tangible objects relating to Dell, Hewlett-Packard, Lenovo,
> > 3COM, or any other computer companies;
> >
> > 3.    Computer hardware bearing the brand names or trademarks of Dell,
> > Hewlett-Packard, Lenovo, or 3Com;
> >
> > 4.    Records and tangible objects relating to warranty or repair service

---

[4] "Matthew Cook" is one of Kuc's known aliases.  (Heitkamp Aff. Attachment B ¶ A5 )
Kuc's real middle initial is "J".

[5] The records indicate that the account was opened on September 3, 2002 in the name of
Matthew J. Kuc at the Target Premises, but the name was changed to "Matthew J. Cook" on
December 16, 2008. (Heitkamp Aff.¶ 32.)

[6] PayPal is an online business that allows people to transfer money over the Internet, to
make and receive credit card payments, and to serve as an electronic alternative to checks and
money orders.  (Heitkamp Aff.¶ 29 n10.)

agreements;

5.      Records and tangible objects related to Matthew Cook, Matthew Cookie, Matt Cook, Matt Cooke, Joe Cook, Jeff Cook, Joe Cook, Jay Cook, Chad Corke, Tad Corke, Tad Cork, Jay Cooke, Joe Cooke, Tad Cookie, Pad Cook, Tad Cook, Sam Jenkins, Dan Conners, Mark Conell, Mark Cerra, Mark Porter, Ryan Davis, John Reynolds, Mark Pearlman, Mark Pearman, Mark Pearoman, Marc Pearlman, Mike Pearlman, Dan Conner, Mark Conners, Dan Clark, Mark Clark, Jim Clark, Jim Park, Ted Collin, Ted Cobin, Sam Staling, Sam Stallings, Joe Stallings, Joe Spelling, Joe Selling, Joe Staling, Joe Stalin, Matt Scott, Dan Summers, or any variations thereof;

6.      Records and tangible objects related to 2130 Mendon Road, Suite 3-377, Cumberland, Rhode Island, 02864, or any variation thereof;

7.      Records and tangible objects related to Sensible Computer and Supplies, Inc. and the address 247 Maple Street, Attleboro, Massachusetts, 02703, or any variation thereof;

8.      Records and tangible objects related to Cyon Data Systems, True Data, Inc., Wildmoon Studios, Quad Man Studios, Arrow App Software, Arrowapp Software, Sensible IT, Ed IT Corp, Bio IT Services, North Atlantic IT, Cyonds, Ideal Computer, GMD Inc., KD Group, Laundey, NEIT, Avaka Software, Cyon ISP, or any variation thereof;

9.      Records and tangible objects related to 3-6 Laurelwood Drive, North Attleboro, MA; 36 Laurel-Wood Drive, North Attleboro, MA; 36 Louralwood Drive, North Attleboro, MA; 36 Loural Wood Drive, North Attleboro, MA; 36 Larel Wood Drive, North Attleboro, MA; 36 Larel Woods Drive, North Attleborough, MA; 36 Larelwood Drive, North Attleboro, MA; 36 Laurenwood Drive, N Attleboro, MA; 247 Mapli Street, Attleboro, MA; 2-47 Maple Street, Attleboro, MA; 247 Maples Street, Attleboro, MA; or any variation thereof;

10.     Records and tangible objects related to the following e-mail addresses, including subscriber information, billing information, and e-mail to, from, or about those e-mail addresses:
        (a)     mcook@arrowapp.com;
        (b)     medit@cyonds.com;
        (c)     domain@cyonisp.net;
        (d)     nu3ro@yahoo.com;
        (e)     matt@cyonisp.net;
        (f)     sales@totalassetrecovery.com;

(g)   todc@cyonds.com; or

(h)   sjenkins@cyonisp.net

11.   Records related to telephone numbers: [REDACTED 6 TELEPHONE NUMBERS] or any other telephone number used to commit or communicate about the offenses listed above;

12.   Records and tangible objects related to the IP addresses assigned to the address of the premises to be searched between June 1, 2005, and the present, including, without limitation, 76.19.186.143;

13.   Shipping records;

14.   Shipping materials;

15.   Records and tangible objects relating to totalassetrecovery;

16.   Records and tangible objects related to eBay and Paypal;

17.   Records and tangible objects relating to banking, credit card, or financial accounts in the names of Matthew Kuc, Tadeusz Kuc, or any variations thereof;

18.   Records and tangible objects relating to employment, service or goods contracts, or jobs entered into by Matthew Kuc, Tadeusz Kuc, or any variations of those names;

19.   Tax records for any of the people or companies identified above;

20.   Records and tangible objects relating to assets held by, on behalf of, or for the benefit of any of the people or companies identified above;

21.   Records relating to travel of any of the people or companies identified above;

22.   Records relating to ownership, occupancy, and use of any of the addresses listed above (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation).

23.   For any computer hardware, computer software, computer-related documentation, and storage media that is called for by this warrant or that might contain things otherwise called for by this warrant ("the items"):

   a.   evidence of who used, owned, or controlled the items;

6

b.  evidence of software that would allow others to control the items, evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the attachment of other computer hardware or storage media;

d.  evidence of counter-forensic programs and associated data that are designed to eliminate data;

e.  evidence of the times the items were used;

f.  passwords, encryption keys, and other access devices that may be necessary to access the items;

g.  records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media; and

h.  Records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers).

"B.  All computer hardware, computer software, computer-related documentation, and storage media.  Off-site searching of these items shall be limited to searching for the items described above."

### The Search and Aftermath

When agents searched the Target Premises, they found numerous computer boards, monitors, laptops, assorted computer parts, boxes from computer companies, thumb drives, servers, that, as predicted by the search warrant affidavit, had been shipped to Kuc's various aliases and addresses.  Kuc was arrested later that day on a criminal complaint, and later indicted on wire fraud in violation of 18 U.S.C. § 1343 and the receipt, possession and storage of stolen property in interstate commerce in violation of 18 U.S.C. §§ 2315, 2.  The indictment was later superseded to add one charge of aggravated identity theft in violation of 18 U.S.C. § 1028A, on the ground that one of Kuc's aliases was the name of one of his business colleagues.

**ARGUMENT**

The Court should deny Kuc's motion to suppress the warrant search of the Target Premises. The search warrant met the particularity requirements of the Fourth Amendment.  It was not overbroad, but rather specified numerous particular types of evidence whose probable existence was raised by the affidavit's allegations.  Moreover, the agents executing the search warrant acted in good-faith reliance on the warrant. The fruits of the warrant search of Kuc's home are therefore admissible.

**I.**      **The Motion to Suppress the Warrant Search of Defendant's Home Should Be Denied Because the Warrant was Sufficiently Particular.**

The Fourth Amendment requires that a warrant describe with "particular[ity]. . . the place to be searched and the persons or things to be seized."  U.S. Const. Amend. IV*; see also* Fed.R.Crim.P. 41(e)(2) ("[T]he warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned.")  The particularity requirement is intended to safeguard an individual's privacy interest against "the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see also Marron v. United States*, 275 U.S. 192, 196 (1927) (holding that particularity requirement "prevents the seizure of one thing under a warrant describing another"); *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (plurality opinion) (holding that particularity requirement protects against "general, exploratory rummaging in a person's belongings"); *United States v. Upham,* 168 F.3d 532, 535 (1st Cir. 1999) ("The cases on 'particularity' are actually concerned with at least two rather different problems; one is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take . . . and the other is whether the category as specified

8

is too broad in the sense that it includes items that should not be seized[.] Unfortunately, making a warrant more objective may also make it broader, and vice versa.") (internal and other citations omitted).

Kuc concedes that the warrant's enumerated categories of specific types of evidence "indicate the ability to be appropriately specific."  (Mot. Supp. ¶ 5 n1.)  And while he broadly claims that "[s]ome of the categories sought are also overly broad," he does not challenge any specific categories.

Rather, Kuc argues that the phrase "including without limitation" impermissibly broadened the warrant. (Kuc  ¶ 5.)  Kuc is wrong.  Courts have held that a catch-all phrase such as "including, without limitation" are permissible as long as it sufficiently limits the discretion of the officers executing the warrant, when viewed in context with the rest of the warrant.  In *Andresen v. Maryland*, the Supreme Court found a warrant authorizing seizure of "fruits, instrumentalities and evidence of crime at this (time) unknown" sufficiently particular because, when read in context, the warrant authorized only seizure of evidence related to the particular crime of false pretenses with respect to parcel of real property.  *Andresen v. Maryland*, 427 U.S. 463, 479-82 (1976); *see also United States v. Bithoney*, 631 F.2d 1, 3 n.1  (1st Cir. 1980) ("The 'other papers' language qualifying the earlier described, seizable documents gives us little pause, as the general tail of the search warrant will be construed so as not to defeat the particularity of the main body of the warrant."); *United States v. Riley,* 906 F.2d 841, 844-45 (2d Cir. 1990) (holding that warrant's language should be construed in light of an illustrative list of seizable items, and reversing district court's suppression of evidence seized under warrant authorizing seizure of records of the investment of drug trafficking proceeds, "including but not limited to,

bank records, brokerage house records, business records, safety deposit box keys or records . . .").

In the warrant at issue here, the phrase "including, without limitation" must be read in context: the phrase is directly preceded by the enumerated charges against Kuc, and is directly followed by a particular list of 23 categories of items to be seized. The phrase "including, without limitation" therefore does not render the warrant overbroad.

Kuc takes the argument further by claiming that the inclusion of the language "including, without limitation" is a "defect" that "could have been easily cured with information clearly available to the government." (Mot. Supp. ¶ 8.) He supports this argument by citing to *United States v. Fuccillo*, 808 F.2d 173 (1st Cir. 1987). The comparison is unpersuasive. In *Fuccillo*, the warrant was impermissibly general because it failed to include a critical limitation: the agents knew that the stolen goods consisted solely of women's clothing, but the warrant was not limited accordingly, and agents therefore seized not only women's clothing, but also men's clothing, fixtures and the entire contents of a warehouse. 808 F.2d at 177. *Fuccillo* is distinguishable, however, because here Kuc does not allege that the government failed to include a necessary limitation on the items to be seized or that the agents seized items that fell outside the crime's understood limits. There is no "defect" in the warrant for Kuc's home, and thus *Fuccillo* has no bearing here.

This is not a general warrant. It permitted the seizure only of records and objects that constituted evidence, fruits and instrumentalities of the charged offenses, then enumerated with specificity which categories of items could be seized. *Contrast United States v. Roche,* 614 F.2d 6, 7–8(1st Cir. 1980) (finding that the warrant could have been limited to one category of

documents for which there was probable cause, but the warrant impermissibly sought documents

pertaining to the entire type of document); *Montilla Records of Puerto Rico v. Morales*, 575 F.2d

324, 326–27 (1st Cir. 1978) (finding that the contraband items subject to seizure could have been

"easily differentiated," but the general warrant provided only generic descriptions).  Moreover,

because there was probable cause to find that Kuc was engaged in a pervasive scheme to

defraud, Magistrate Judge Sorokin had great latitude to authorize broad seizure of the business

records found at the home.  *See United States v. Brien,* 617 F.2d 299, 309 (1st Cir. 1980) (finding

probable cause for a persuasive scheme to defraud and authorizing seizure of all the business

records).

II.     **The Motion to Suppress Should Be Denied Because the Agents Executed the
        Warrant in Good-Faith Reliance on the Warrant.**

        Even were the Court were to find some flaws in the warrant, the evidence seized should

not be suppressed, because the agents executed the warrant in good faith.  *United States v. Leon*,

468 U.S. 897, 922 (1984).  This exception applies to a search executed pursuant to a warrant

unless: (1) the magistrate was misled by information in an affidavit that the affiant knew was

false or would have known was false except for his reckless disregard for the truth; (2) the

magistrate wholly abandoned his detached and neutral judicial role; (3) the warrant was "so

facially deficient [e.g., failing to list, with sufficient particularity, the evidence to be seized] ...

that the executing officers cannot reasonably presume it to be valid"; or (4) the supporting

affidavits were "'so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable.'"  *United States v. Zayas-Diaz*, 95 F.3d 105, 113 (1st Cir. 1996)

(*quoting Leon*, 468 U.S. at 923).  If these conditions are not satisfied, however, evidence seized

by police officers acting "in reasonable good faith reliance on a search warrant issued by a

neutral and detached magistrate, but ultimately found to be unsupported by probable cause, need not be suppressed." *United States v. Bonner*, 808 F.2d 864, 867 (1st Cir. 1986) (denying, based on good faith exception, exclusion of evidence seized pursuant to warrant that omitted the address of the premises) (*citing Leon*, 468 U.S. at 908).

Kuc has not argued that the warrant lacked probable cause, that the affidavit was knowingly false, or that Magistrate Judge Sorokin was anything other than neutral and detached. Nor is there any evidence that could support this argument.

Here, there is nothing about the warrant which would have rendered the executing officers' beliefs in its validity "entirely unreasonable." To the contrary, the warrant specified numerous categories of items and records to be seized, specifications that would guide the agents' discretion. The agents reasonably acted within the scope of the warrant issued to them by a detached and neutral magistrate. The warrant was not so facially deficient by failing to particularize the place to be searched or things to be seized that the executing officers could not reasonably presume it to be valid. *United States v. Leon*, 468 U.S. at 923.

Therefore, even if the warrant had a defect, the evidence should be admitted under the good-faith exception to the exclusionary rule. "[E]xclusion exacts a heavy toll on both the judicial system and society at large," is appropriate only when the benefits of deterrence outweighs these heavy costs, and as such, should be a "last resort." *Davis v. United States*, 131 S.Ct. 2419, 2427 (2011).

Further, if were exclusion an appropriate, and it is not, the remedy against an overly broad seizure is not *blanket* suppression but rather *partial* suppression of the offending items. *United States v. Falon,* 959 F.2d 1143, 1149 (1st Cir. 1992). Here, however, Kuc has not

specified a single item that fell outside the warrant's purview, or even a single item that fell

outside the enumerated specific categories.  The Court must therefore conclude that the agents

executed the warrant reasonably and within the warrant's scope, leaving nothing to be excluded.

## CONCLUSION

For all the foregoing reasons, Kuc's Motion to Suppress the Search of Defendant's Home

should be denied.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:     */s/ Amy Harman Burkart*
AMY HARMAN BURKART
SCOTT L. GARLAND
Assistant United States Attorneys

<u>CERTIFICATE OF SERVICE</u>

I certify that this document was filed on the date listed below through the ECF system, which will provide electronic notice to counsel as identified on the Notice of Electronic Filing.

<u>/s/ Amy Harman Burkart</u>
AMY HARMAN BURKART
Assistant United States Attorney

Dated: April 5, 2012

14