## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Case No. 11-CR-10014-DPW** |
| **MATTHEW J. KUC,** | |
| **Defendant.** | |

## GOVERNMENT'S TRIAL BRIEF

Defendant faces a superseding indictment that charges him with five counts of wire fraud in violation of 18 U.S.C. § 1343, one count of the receipt, possession, and storage of stolen property in interstate commerce in violation of 18 U.S.C. § 2315, and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A. The trial is scheduled to begin on Monday, June 25, 2012, and the parties have estimated the trial will take eight to ten trial days.

This brief summarizes the factual background, the witnesses, the evidence that the United States expects to present at trial, and anticipated evidentiary, legal, and logistical issues.

## I.     KUC'S FRAUD SCHEME

From 2005 through his arrest on December 14, 2010, Defendant repeatedly asked computer companies by telephone or Internet communications to replace computer equipment that he claimed was broken, but which was actually unbroken and which he did not own or have the responsibility for servicing. He asked the companies to ship the replacement equipment to four addresses: his home at 36 Laurelwood Drive, North Attleborough, Massachusetts; his office at Sensible Computers at 247 Maple Street, Attleborough, Massachusetts; a friend's office at 42 Union Street, Attleborough, Massachusetts; and a mailbox he rented at a UPS Store at 2130

Mendon Road, Suite 3-377, Cumberland, Rhode Island, a short drive from Defendant's home.[1]

To prove that he was entitled to a replacement, Defendant would provide the computer companies a serial number or service tag that belonged to a real piece of equipment, albeit a piece of equipment that he did not possess.  For various business reasons, the companies did not require Defendant to return some of the purportedly broken equipment, perhaps because they could not have made use of that equipment even if Defendant had returned it.  But the computer companies generally sent replacements on the understanding that the broken equipment would be returned.  Defendant took advantage of the fact that the computer companies, for purposes of customer satisfaction and out of customer trust, would ship a replacement before receiving the broken equipment.  He did not return the broken equipment because he did not have the broken equipment in the first place.  Once he received the warranty replacement equipment, Defendant generally sold it through a business that he called "Total Asset Recovery."

When a computer company realized that someone was taking advantage of their warranty policy, it would stop shipping parts to that name and/or address.  So Defendant obfuscated the scheme and his involvement in the scheme by ordering the equipment using numerous aliases and variations on his shipping addresses.  The companies' internal systems only recognized exact matches of names and addresses, so Defendant varied the information he provided and was able to evade the systems.  Defendant thus exploited the fact that the companies' internal systems might differentiate between variations that the person actually delivering the package would

---

[1]  These addresses will be repeated numerous times throughout the trial.  For ease of reference there and here, the United States will often use the shorthand of referring to them by their streets and street numbers:  36 Laurelwood Road, 247 Maple Street, 42 Union Street, and 2130 Mendon Road.

recognize as the same address. (As a fictional example, Defendant might order equipment to be sent to "123 Main Street," "123 Maine Street," "1-23 Main Street," and "1-23 Maine Street," and might use a variety of aliases at each of those addresses.  The computer companies' internal systems would treat these as different addresses, but a person delivering packages would still deliver them to the same location.)  These variations made it more difficult for the companies to be certain that Defendant's orders were made by the same person, which helped Defendant perpetuate the scheme.

## II.   THE CHARGES AND THEIR ELEMENTS

The Superseding Indictment charges Defendant with a general scheme to defraud Dell, 3Com, Hewlett-Packard, and Lenovo of computer components.  Counts 1 through 5 allege five specific wires intended to obtain equipment fraudulently from Dell.  Count 6 charges Defendant with receiving, possessing, and storing unlawfully-converted equipment from Dell, 3Com, and Hewlett-Packard on the day of the search.  Count 7 charges Defendant with aggravated identity theft for committing the scheme in part by misusing the name, business name, business address, and variants of a victim identified as F.S.

### A.   Wire Fraud (18 U.S.C. § 1343)

Counts 1 through 5 of the Superseding Indictment charge the defendant with wire fraud, in violation of 18 U.S.C. § 1343, which provides as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or

imprisoned not more than 20 years, or both.

The elements of wire fraud are:

*First,* a scheme, substantially as charged in the Superseding Indictment, to defraud or obtain money or property by means of false or fraudulent pretenses;

*Second*, the scheme involved a false statement, representation or concealment about material facts;

*Third*, the defendant's knowing and willful participation in the scheme with the intent to defraud; and

*Fourth*, the use of interstate wire communications, on or about the date alleged, in furtherance of the scheme.

*See* First Circuit Pattern Jury Instructions (Criminal), No. 4.18.1343 (1998);  *Neder v. United States*, 527 U.S. 1, 25 (1999).

As described above, Defendant engaged in a scheme to defraud computer companies, including the companies that produce Dell, 3Com, Hewlett-Packard, and Lenovo computer components.  On multiple occasions, Defendant told these companies that he needed a warranty replacement for a defective, broken, or malfunctioning computer component that he fraudulently pretended to own or have the right to service.  Defendant made these requests via electronic chat sessions with the computer companies' personnel, and these sessions were transmitted over the Internet between Defendant's computers in Massachusetts and the computer companies' computers outside Massachusetts.   The Superseding Indictment charges Kuc with engaging in this scheme from on or about June 1, 2005 through and including December 14, 2010.  Counts 1 through 5 each concern a specific instance of Kuc (using an alias) contacting Dell via chat

session to request a replacement for a computer component that he purported to own and claimed was defective, when in reality the component was operating normally and owned by someone else, who did not know Kuc.

Each of these five chat sessions is an interstate wire communication in which Defendant knowingly and willfully made a materially false misrepresentation to defraud and obtain property by false or fraudulent pretenses.  *See, generally*, *United States v. Martin*, 228 F.3d 1, 18 (1st Cir. 2000) (affirming wire fraud conviction based on e-mails).

### B.     Receipt, Possession, and Storage of Stolen Property in Interstate Commerce (18 U.S.C. § 2315)

Count 6 of the Superseding Indictment charges Kuc with receipt, possession, and storage of stolen property in interstate commerce, in violation of 18 U.S.C. § 2315, which provides in relevant part as follows:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more...shall be fined under this title or imprisoned not more than ten years, or both.

The elements of 18 U.S.C. § 2315 are:

*First*, that the goods, wares, merchandise, securities or money were stolen, converted, or taken by fraud;

*Second*, that the defendant received, stored, or possessed the property;

*Third*, that the property had moved in, or was a part of, interstate commerce after being stolen, converted, or taken by fraud;

*Fourth*, that the value of the property was $5,000 or more; and

*Fifth*, that the defendant knew the property had been stolen, converted,or unlawfully

5

taken.

*See* Modern Federal Jury Instructions - Criminal § 54.06.

Here, the goods, wares, and merchandise charged in the Superseding Indictment are the dozens of boxes of computer components from Dell, 3Com, and Hewlett-Packard stored at Defendant's residence.  Defendant, who had requested this merchandise as part of the scheme to defraud described above, stole, unlawfully converted, and took this merchandise, and it crossed a state boundary to arrive at his residence in Massachusetts.

### C.    Aggravated Identity Theft (18 U.S.C. 1028A)

Count 7 of the Superseding Indictment charges Defendant with aggravated identity theft, in violation of 18 U.S.C. § 1028A, which provides as follows:

> Whoever, during and in relation to any felony violation enumerated subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

The felonies enumerated in subsection (c) include mail and wire fraud.  18 U.S.C. § 1028A (c)(5).

The elements of aggravated identity theft are:

*First*, that the defendant committed, aided and abetted, or was otherwise guilty of wire fraud or mail fraud;

*Second*, that, during and in relation to the crime of wire fraud or mail fraud, the defendant knowingly transferred, possessed, or used a means of identification, described in the Superseding Indictment, without lawful authority;

*Third*, that the means of identification belonged to another real person; and

6

*Fourth*, that the defendant knew that the means of identification belonged to another real person.

*See* 18 U.S.C. §1028A; The Honorable D. Brock Hornby's Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit, No. 4.18.1028A.

Here, the Government will show that Defendant, during and in relation to committing mail fraud and wire fraud, used without lawful authority the name of Francisco Samuel, a man he knew, both alone and in conjunction with Francisco Samuel's business name and business address, and variants thereof.

## III.   THE EVIDENCE

### A.      Witnesses

The United States anticipates calling approximately 20 witnesses.

#### 1.       Computer Company Representatives

The United States anticipates calling a representative from each of the computer companies that Defendant defrauded: Dell, Hewlett-Packard, Lenovo, 3Com, and Schneider/APC.  The representatives will testify about their companies' products; their warranty replacement policies; how customers order waranty replacements over the telephone or the Internet; the records generated by this process; the orders made to 36 Laurelwood Road, 247 Maple Street, 42 Union Street, and 2130 Mendon Road, and variants thereof; Defendant's failure to return the parts he claimed to be broken; how Defendant's use aliases and address variants obfuscated the scheme and his involvement in the scheme; Defendant's other efforts to escape detection; and the equipment's value.

The Dell representative will also testify that the wires mentioned in Counts 1 through 5

traveled in interstate commerce.

In addition, Hewlett-Packard's representative, Joe Fallon, will testify that when HP asked Defendant to prove that he owned a piece of equipment he claimed to be broken, Defendant sent an invoice purporting to show the piece's purchase from True Data Inc. at 42 Union Street.  The invoice appeared to be fabricated inattentively from a computer template, because under True Data Inc.'s name, the invoice said "Your Company Slogan" rather than an actual corporate slogan.  Moreover, when Fallon investigated True Data Inc., he learned that nobody at 42 Union Street recognized the company and that nobody at the real True Data in Uxbridge recognized who Defendant was.  Fallon will also testify that he saw Defendant accept and sign for a package from Hewlett-Packard to "John Reynolds."  Fallon will also testify that he viewed Total Asset Recovery's offerings on eBay, the online auction and sales site, and that they included Hewlett-Packard and other computer equipment.

**2.    People to Verify that Defendant Received Computer Equipment at the Four Addresses**

The United States anticipates calling about five people to verify that Defendant was the person who used the four addresses listed above to receive the fraudulently-obtained equipment.

To verify that Defendant used his house at 36 Laurelwood Drive to receive the equipment, the United States plans to call FBI Special Agent Sarah DeLair, a United Parcel Service employee, and Defendant's parents.  Special Agent DeLair will testify about the evidence seized from the house pursuant to a search warrant.  The United Parcel Service employee will testify that Defendant accepted a Hewlett-Packard package addressed to "John Reynolds" at his house.  Defendant's parents are expected to testify that Defendant and his parents were the only

people who lived at the house and that they, his parents, were not responsible for ordering, receiving, or storing computer equipment at the house.  The parties are working out whether they can stipulate to the parents' testimony.

To verify that Defendant had rented the mailbox at the UPS store at 2130 Mendon Road, the United States plans to call April Williams, an employee at the store.  Ms. Williams will testify that Defendant opened the mailbox there and had his father pick up the equipment.  She will also testify about the volume of the equipment that came through the store.  The United States may need to briefly call the store's owner, Aurelia Donovan, to complete this picture.

To verify that Defendant had equipment sent to Sensible Computers at 247 Maple Street, the United States plans to call Raymond Di Ciaccio, who owned the company, and Ruth Forrand, who worked there.  Mr. Di Ciaccio will testify that he employed Defendant at the company to fix computers; that the company bought some computer equipment from Defendant; that he, Di Ciaccio, did not order computer equipment from Dell, Hewlett-Packard, Lenovo, or 3Com using anybody's name other than his own; and that he was not responsible for ordering computer equipment to be shipped to Defendant's house or UPS mailbox.  Ms. Forrand will testify that she worked at Sensible Computers; that when she ordered warranty replacement equipment online she used her own name; that she accepted packages for the company; and that when a package came addressed to somebody other than one of the Sensible Computers employees, she set it aside for Defendant.  Mr. Di Ciaccio and Ms. Forrand will also testify about Defendant's business relationships with them, Sensible Computers, and Total Asset Recovery.  Ms. Forrand will also likely identify Defendant's use of certain e-mail addresses.

To verify that Defendant received computer equipment at 42 Union Street, the United

States plans to call Francisco Samuel, who kept his office for Abacus Software at 42 Union Street.  Mr. Samuel will testify that he was friends with Defendant; that Defendant operated Total Asset Recovery; that Samuel ordered warranty replacement parts very occasionally; that he did not order parts from Hewlett-Packard; that when he ordered parts, he used his real name, with no misspellings; that Defendant asked him to accept packages of computer equipment for him; and that Samuel did so until a computer company complained to him that he had not returned a defective part, after which Samuel told Defendant about the inquiry.  Mr. Samuel will also testify that he was unfamiliar with True Data Inc., even though the invoice that Defendant had submitted to Hewlett-Packard listed True Data Inc.'s address as 42 Union Street.

### 3.    Equipment Owners

Counts 1 through 5 allege Defendant's use of interstate wires to fraudulently request five specific pieces of warranty replacement parts from Dell on five separate occasions.  In each of these communications, Defendant identified the purportedly broken equipment's service tag. The United States was able to identify who actually owned these pieces of equipment.  The United States therefore plans to call the equipment owners to testify that they or their employer own the equipment that Defendant claimed to be broken; that it was not broken or serviced; that they do not know Defendant or his company; and that they did not ask him or anybody else to repair it.  These witnesses are Morgan Backhous, Kurt Cuff, Mark Olsen, Ben Rubin, and Michael Wisener.

### 4.    Law Enforcement's Viewing of Defendant's Total Asset Recovery Website and Friendster Account

As mentioned above, Defendant sold the fraudulently-obtained computer equipment

through Total Asset Recovery.  The United States plans to call Ken McCarthy, formerly with the North Attleborough Police Department, to testify that on various occasions throughout the investigation, he viewed Total Asset Recovery's offerings of Dell, Hewlett-Packard, 3Com, and Lenovo computer equipment on eBay.  Mr. McCarthy will also authenticate copies of Total Asset Recovery's equipment listings on eBay that he had printed out.  Mr. McCarthy will also testify that he had printed out a copy of Defendant's Friendster page, which referred to Defendant's love of money.

### 5.      Law Enforcement's Recovery of Computer Evidence

During the search of Defendant's house, agents seized his computer.  It is a treasure trove of relevant evidence.  The United States plans to call Manny Velasco of the FBI to testify about how computers record and store information, how that information can be recovered after a seeming deletion, his receipt of the computer's hard drive, his processing of the hard drive, how certain files were found on the computer, and what they say.

### 6.      Summary Witnesses

The United States plans to call auditor Thomas Zappala, of the United States Attorney's Office, to summarize the voluminous records about Defendant's warranty replacement requests, specifically, the name and address variations he used, the consistency between the equipment he requested and the equipment that he sold through Total Asset Recovery, and the value of the equipment.  The United States plans to call forensic accountant Lauren George, of the United States Marshals Service, to summarize Defendant's financial records.   Among other purposes, Ms. George's testimony is critical to establishing the forfeiture allegations in the Indictment.

**B.      Physical Evidence**

The United States anticipates admitting the following categories of evidence:

**1.      Documents from the Computer Companies**

The first category consists of documents from the computer companies, including:

- spreadsheets generated by the computer companies summarizing orders for warranty replacement equipment to Defendant's four addresses, which will show the jury Defendant's vast volume of orders using many aliases and address-variants;[2]

- business records reflecting Defendant's telephone or Internet orders[3] of selected pieces of equipment to illustrate how Defendant would order the equipment by using false names and address-variations, some of which memorialize or consist of the five specific interstate wires charged in Counts 1 through 5;

- records such as invoices and shipping labels that reflect and communicated the computer companies' policy that after the customer received warranty replacement equipment, he should return the purportedly broken part;

- the computer companies' business records or summaries of orders shipped to Defendant at the four addresses for which they received no return broken part, as well as the companies' efforts to obtain the purportedly broken equipment and to bill him for his failure to do so;

- the invoice that Defendant sent Hewlett-Packard to fraudulently claim that he

---

[2] To make the spreadsheets more manageable for courtroom presentation and juror comprehension, the United States will edit them to omit columns of information not germane to the charges, such as the name of the company employee who took the order.  The United States understands that Defendant does not object to these edits.

[3] As mentioned above, Defendant ordered the equipment by telephone and over the Internet.  Telephone orders would be summarized by a company employee on a business form. Internet orders were made through "electronic chat sessions," or "electronic chats," essentially a real-time typewritten conversation conducted over the Internet between Defendant and a company employee.  The companies' records of electronic chats sometimes include not only the words written by Defendant and the company employees, but also other information captured by the companies about the interactions, such as the chats' times and dates and sometimes the IP address used by the Defendant.

had purchased Hewlett-Packard equipment from True Data Inc. at 42 Union Street, which HP representative Joe Fallon later debunked;

• a very short video of Defendant signing for a package at his house sent from Hewlett-Packard to "John Reynolds."

### 2.      Photographs from Equipment Owners

The United States plans to introduce photographs of the equipment that in Counts 1 through 5 Defendant claimed to be broken. The photographs were made by the equipment's owners and therefore demonstrate that the equipment was not in Defendant's possession and was not broken.

### 3.      UPS Store Records

The United States plans to introduce records from the UPS store at 2130 Mendon Road to prove that Defendant rented a mailbox there and received computer equipment there.

### 4.      Records from Sensible Computers

The United States plans to introduce W-2 forms generated by Sensible Computers to document that Defendant worked for a computer repair company and received far less in legitimate wage income than would explain his lifestyle. The United States also plans to introduce 1099-MISC forms generated by Sensible Computers that reflect Defendant's sales of computer equipment to Sensible Computers. Along these same lines, the United States plans to introduce a few selected invoices for computer equipment sales from Defendant's alter ego, Total Asset Recovery, to Sensible Computers.

### 5.      Defendant's Friendster Page

During the investigation, Defendant had a page on Friendster, a social media website, in which he proclaimed how much money mattered to him. The United States plans to introduce a picture of that page taken by Ken McCarthy, as well as a business record from Friendster identifying

the account as Defendant's.

### 6.      Ebay/PayPal Records

Defendant used Total Asset Recovery to sell hundreds, if not thousands, of pieces of computer equipment through eBay, the online auction and sales website, and PayPal. (eBay handled the sales, whereas PayPal handled the monetary transactions.) The United States plans to introduce eBay and PayPal records that document Defendant's ownership and use of the Total Asset Recovery and other eBay and PayPal accounts. Some of this voluminous information may be presented in summary form. The United States also plans to introduce several of Ken McCarthy's computer printouts of Total Asset Recovery's offerings on eBay.

### 7.      Telephone and Internet Records

Depending on the parties' stipulations and how the other evidence goes in, the United States may introduce records showing Defendant's use of specific IP addresses and telephone numbers connected with his orders of warranty replacement equipment.

### 8.      UPS Pick-up Records from 36 Laurelwood Drive

When Defendant and Total Asset Recovery sold his fraudulently-obtained computer equipment, he appears to have shipped it out from his house. The United States plans to introduce a spreadsheet from the United Parcel Service showing the hundreds of shipments that Defendant made from his house. Because the spreadsheet contains the addresses of Defendant's numerous customers, the United States plans to introduce only the first and last pages of the 78-page document, and to redact the personally-identifying information consistent with the Court's policies.

### 9.      Documents and Objects Seized During the Search

The search of Defendant's house revealed a number of incriminating documents and objects.

14

These include documents from the computer equipment companies, such as invoices and packing slips, that reflect Defendant's use of the aliases and address-variants.  They also include numerous boxes of computer equipment from Dell, Hewlett-Packard, Lenovo, and 3Com: the United States will introduce a few of these boxes, along with photographs of the boxes and a chart summarizing which company sent the equipment, when, to which alias and address, and the equipment's value. They also include a small notebook of lined paper in which Defendant apparently handwrote some of the aliases, addresses, and address variations that he used in the scheme.  They also include photographs taken by the officers at the scene, photographs that document Defendant's ownership of Total Asset Recovery, his ownership of another computer company related to the scheme, and the computer equipment and many boxes of computer equipment strewn throughout the house.  The United States plans to introduce this evidence through FBI Special Agent Sarah DeLair, the evidence custodian at the search.

The United States also plans to introduce a number of electronic records recovered from Defendant's computer at his house.  Those records include the following:

- digitized voicemails[4] from the computer equipment companies indicating that they had sent one of his aliases computer equipment and sometimes telling him that he needed to return the purportedly broken part;

- various spreadsheets to apparently track Defendant's orders of equipment from the computer equipment companies;

- a text file that lists some of Defendant's aliases and address-variants;

- several text files that appear to set forth Defendant's script for claiming that certain types of computer equipment does not work;

---

[4] Defendant used "voice-over-Internet-Protocol" telephone service, which apparently resulted in his voicemail being saved to his computer.

- snippets of Defendant's electronic chats with Hewlett-Packard personnel in which he sought HP replacement equipment;

- a template apparently used to create the fraudulent True Data Inc. invoice that Defendant submitted to Hewlett-Packard;

- recovered records showing Defendant's looking up computer warranty information on Dell's and Lenovo's websites for related series of computer serial numbers or service tag numbers; and

- several text messages archived from Defendant's cellphone that indicate his knowledge that 3Com was unhappy with him.

The electronic computer records will be introduced through Manny Velasco, an FBI computer forensic analyst.

### 10.   Forfeiture-Related Documents

The United States plans to introduce certain documents for the purpose of establishing its forfeiture claims to certain assets. These documents include those related to Defendant's cars, some of which were seized from Defendant's house, and bank record and cash flow summaries prepared by forensic accountant Lauren George of the U.S. Marshals Service. The bank record and cash flow evidence will also help establish that the equipment that Defendant sold through Total Asset Recovery came at least in part through his scheme to defraud and not from purchasing the equipment legitimately from other equipment dealers.

## IV.   EVIDENTIARY ISSUES

The United States foresees two broad evidentiary issues. The first is the introduction of evidence of fraudulent transactions committed by Defendant within the charged scheme, but not charged specifically in the Superseding Indictment. As the Court is aware, this evidence is generally admissible. The second is that First Circuit precedent precludes Defendant from arguing that the

victims should have done more to protect themselves from Defendant's fraud.

Although these are serious issues, the United States has briefed them in separate motions in limine and therefore will not repeat those arguments here.

## V.   SUBSTANTIVE ISSUES

The Government does not anticipate any substantive legal issues beyond those discussed immediately above.

## VI.   LOGISTICAL ISSUES

The Superseding Indictment includes forfeiture allegations.  The Government has seized both property (automobiles) and funds (from multiple bank accounts) from Defendant, and shall seek the forfeiture of these specific properties as well as a money judgment against Defendant for the total proceeds obtained as a result of the criminal conduct on which he is convicted.  As discussed above, the Government intends to include evidence in its case-in-chief, through the summary testimony of Ms. George, to provide a basis for a determination that the seized property and funds are proceeds of unlawful activity, and the total amount of the proceeds generated by the unlawful conduct.  As to the specific property, pursuant to Fed. R. Crim. Pro. 32.2 (5), "the Court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict."  There is no right to a jury finding as to the total money judgment entered against the defendant, and that determination is made by the Court.  *See id.*  If neither party requests a jury finding on the forfeiture of specific assets, then the Court shall decide forfeiture both as to the specific property and the money judgment.  Pursuant to Fed. R. Crim. Pro. 32.2 (b)(1)(B), if forfeiture is contested, either party may request a hearing, in which case the Court must conduct a hearing after the verdict or finding of guilty.  Thus, if

17

Defendant contests forfeiture, or some component of forfeiture, and requests a hearing, the Court will need to conduct a hearing after any verdict or finding of guilty and before sentencing.  If either party requests a jury finding as to specific assets, then, the jury may need to be retained after a finding of guilty.

Another logistical issue that the Court will want to consider is the July 4th holiday, which will occur in the middle of the second trial week.  Although the United States is paring down its trial of Defendant's massive fraud to minimize the number of witnesses, exhibits, and court days, the trial is nonetheless likely to last through the July 4th holiday.  During voir dire, the Court may wish to consider the extent to which jurors' vacations schedules might be accommodated during the second week of trial.  The United States does not want to prolong the schedule any more than is necessary. However, the United States does want to ensure that a representative jury is seated.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:     */s/ Scott L. Garland*
Scott L. Garland
Amy Harman Burkart
Assistant U.S. Attorneys

18

## CERTIFICATE OF SERVICE

I hereby certify that this document, will be filed through the ECF system and send thereby to the registered participants as identified on the Notice of Electronic Filing.

> _/s/ Scott L. Garland_
> Scott L. Garland
> Assistant United States Attorney

Date:   June 4, 2012