UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>MATTHEW KUC, )<br>)<br>        Defendant. )<br>) | CRIMINAL ACTION NO.<br>11-10014-DPW |

MEMORANDUM AND ORDER
June 14, 2012

The parties continue to contest Defendant Matthew Kuc's motion to suppress (Dkt. No. 42)[1] items seized during a search of his home pursuant to a warrant on December 14, 2010. I will deny Kuc's motion.

## I.  FACTS

Matthew Kuc seeks to suppress the fruits of the warrant search only on particularity grounds. Therefore, I only detail those facts relevant to his particularity challenge.

A.  The Search Warrant

FBI Special Agent Kenneth Heitkamp, the agent responsible for the joint FBI, IRS, and North Attleboro Police Department investigation of Kuc, applied for a warrant to search Kuc's residence in December 2010. In support of his application,

---

[1] The government has withdrawn (Dkt. No. 49) its opposition to the defendant's motion (Dkt. No. 43) to suppress certain statements made by the defendant, apparently having concluded that they will not be offered in evidence at trial.

Heitkamp provided an affidavit detailing Kuc's scheme to defraud a number of computer companies.

The affidavit alleged that Kuc used a number of aliases (mainly variations on his own name) and shipping addresses (variations on his home address and boxes registered to himself or his aliases) to request replacement parts from computer manufacturers and then re-sell them on Ebay. Kuc would contact the computer manufacturer and complain of a defective computer part that he claimed either to own or be authorized to service, and request a warranty replacement. However, the parts Kuc claimed to own or be authorized to service belonged to other people and companies with no connection to Kuc. Once Kuc received the replacement parts, he would then re-sell them through his online storefront on Ebay, shipping them from his North Attleboro residence.

The North Attleboro Police Department initially learned of Kuc's scheme in 2009 from investigators working for one of the defrauded computer companies.

In 2010, FBI Agent Heitkamp, working in concert with the North Attleboro police, discovered that Kuc's Ebay store was selling parts from other computer manufacturers as well. An FBI undercover employee purchased a number of these computer parts, made a payment to a PayPal account owned by Kuc, and received shipment of the fraudulently-obtained computer parts from Kuc's

home address.  The package also listed Kuc's phone number and e-mail address.

Based on Heitkamp's affidavit, on December 10, 2010, Magistrate Judge Sorokin issued a search warrant for Kuc's home at 36 Laurelwood Drive, North Attleboro, Massachusetts.  Records indicated that Kuc lived with his parents at that address.

The search warrant authorized the seizure of:

A. All records, in whatever form, and tangible objects that constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1343 (wire fraud), 2314 (interstate transportation of stolen property), 2315 (storage and sale of stolen property in interstate commerce), and 2 (aiding and abetting), including, without limitation:

    1. Records and tangible objects relating to the purchase, repair, sale, or shipping of computer hardware;
    2. Records and tangible objects relating to Dell, Hewlett-Packard, Lenovo, 3COM, or any other computer companies;
    3. Computer hardware bearing the brand names or trademarks of Dell, Hewlett-Packard, Lenovo, or 3Com;
    4. Records and tangible objects relating to warranty or repair service agreements;
    5. Records and tangible objects related to Matthew Cook, Matthew Cookie, Matt Cook, Matt Cooke, Joe Cook, Jeff Cook, Joe Cook, Jay Cook, Chad Corke, Tad Corke, Tad Cork, Jay Cooke, Joe Cooke, Tad Cookie, Pad Cook, Tad Cook, Sam Jenkins, Dan Conners, Mark Conell, Mark Cerra, Mark Porter, Ryan Davis, John Reynolds, Mark Pearlman, Mark Pearman, Mark Pearoman, Marc Pearlman, Mike Pearlman, Dan Conner, Mark Conners, Dan Clark, Mark Clark, Jim Clark, Jim Park, Ted Collin, Ted Cobin, Sam Staling, Sam Stallings, Joe Stallings, Joe Spelling, Joe Selling, Joe Staling, Joe

Stalin, Matt Scott, Dan Summers, or any variations thereof;

6. Records and tangible objects related to 2130 Mendon Road, Suite 3-377, Cumberland, Rhode Island, 02864, or any variation thereof;

7. Records and tangible objects related to Sensible Computer and Supplies, Inc. and the address 247 Maple Street, Attleboro, Massachusetts, 02703, or any variation thereof;

8. Records and tangible objects related to Cyon Data Systems, True Data, Inc., Wildmoon Studios, Quad Man Studios, Arrow App Software, Arrowapp Software, Sensible IT, Ed IT Corp, Bio IT Services, North Atlantic IT, Cyonds, Ideal Computer, GMD Inc., KD Group, Laundey, NEIT, Avaka Software, Cyon ISP, or any variation thereof;

9. Records and tangible objects related to 3-6 Laurelwood Drive, North Attleboro, MA; 36 Laurel-Wood Drive, North Attleboro, MA; 36 Louralwood Drive, North Attleboro, MA; 36 Loural Wood Drive, North Attleboro, MA; 36 Larel Wood Drive, North Attleboro, MA; 36 Larel Woods Drive, North Attleborough, MA; 36 Larelwood Drive, North Attleboro, MA; 36 Laurenwood Drive, N Attleboro, MA; 247 Mapli Street, Attleboro, MA; 2-47 Maple Street, Attleboro, MA; 247 Maples Street, Attleboro, MA; or any variation thereof;

10. Records and tangible objects related to the following e-mail addresses, including subscriber information, billing information, and e-mail to, from, or about those e-mail addresses:
    (a) mcook@arrowapp.com;
    (b) medit@cyonds.com;
    (c) domain@cyonisp.net;
    (d) nu3ro@yahoo.com;
    (e) matt@cyonisp.net;
    (f) sales@totalassetrecovery.com;
    (g) todc@cyonds.com; or
    (h) sjenkins@cyonisp.net

11. Records related to telephone numbers: 401-515-4556; 508-400-7082; 781-319-7986; 508-342-5418; 781-577-2233; 508-643-4231 or any other telephone number used to commit or communicate about the offenses listed above;

4

12. Records and tangible objects related to the IP addresses assigned to the address of the premises to be searched between June 1, 2005, and the present, including, without limitation, 76.19.186.143;
13. Shipping records;
14. Shipping materials;
15. Records and tangible objects relating to totalassetrecovery;
16. Records and tangible objects related to eBay and Paypal;
17. Records and tangible objects relating to banking, credit card, or financial accounts in the names of Matthew Kuc, Tadeusz Kuc, or any variations thereof;
18. Records and tangible objects relating to employment, service or goods contracts, or jobs entered into by Matthew Kuc, Tadeusz Kuc, or any variations of those names;
19. Tax records for any of the people or companies identified above;
20. Records and tangible objects relating to assets held by, on behalf of, or for the benefit of any of the people or companies identified above;
21. Records relating to travel of any of the people or companies identified above;
22. Records relating to ownership, occupancy, and use of any of the addresses listed above (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation).
23. For any computer hardware, computer software, computer-related documentation, and storage media that is called for by this warrant or that might contain things otherwise called for by this warrant ("the items"):
    a. evidence of who used, owned, or controlled the items;
    b. evidence of software that would allow others to control the items, evidence of the lack of such malicious software, and evidence of the presence or absence of security software designed to detect malicious software;
    c. evidence of the attachment of other computer hardware or storage media;

    d. evidence of counter-forensic programs and associated data that are designed to eliminate data;
    e. evidence of the times the items were used;
    f. passwords, encryption keys, and other access devices that may be necessary to access the items;
    g. records and tangible objects pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media; and
    h. Records and tangible objects relating to the ownership, occupancy, or use of the premises to be searched (such as utility bills, phone bills, rent payments, mortgage payments, photographs, insurance documentation, receipts and check registers).

  B. All computer hardware, computer software, computer-related documentation, and storage media. Off-site searching of these items shall be limited to searching for the items described above.

B. <u>Procedural History</u>

The operative charging document against Kuc is a superceding indictment filed June 8, 2011, alleging five counts of wire fraud, 18 U.S.C. § 1343; one count of receipt, possession, and storage of stolen property in interstate commerce, 18 U.S.C. § 2315; and one count of aggravated identity theft, 18 U.S.C. § 1028A. On March 1, 2012, Kuc filed separate motions to suppress the fruits of the warrant search of his home (Dkt. No. 42) and statements he made to police during the search (Dkt. No. 43). As noted, *see* Note 1 *supra,* the government has withdrawn its opposition to Kuc's motion to suppress the statements because

they will not be used at trial. Consequently, I will treat that motion as moot.

## II. DISCUSSION

A. <u>Legal Framework</u>

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This requirement prohibits so-called general warrants, which vest in the executing officer unbridled discretion and allow "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 447 (1971); *see also Marron v. United States*, 275 U.S. 192, 196 (1927).

The particularity requirement addresses two distinct concerns, imprecision and overbreadth. Imprecision undermines the warrant's role in guiding and controlling the executing officer's judgment in the selection of what to search and seize. *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) (citing *United States v. Abrams*, 615 F.2d 541, 545-46 (1st Cir. 1980)). Overbreadth, the concern that a warrant's listed category of items to be searched and seized may include items that should not be seized, raises the specter that the search will violate the Fourth Amendment's probable cause requirement. *Id.* (citing *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995)); *cf. Marron*, 275 U.S. at 196 (noting that the particularity

requirement "prevents the seizure of one thing under a warrant describing another"). The two concerns are always present, but can be in tension with each other; as the First Circuit recognized, "making a warrant more objective may also make it broader, and vice versa." *Id.*

As to imprecision, in determining whether a warrant meets the particularity requirement, the touchstone is whether a reasonable officer reading the warrant would know what items are to be seized. *See United States v. Tiem Trinh*, 665 F.3d 1, 15 (1st Cir. 2011). My review of the warrant satisfies me that it is sufficiently precise to meet constitutional requirements.

As to overbreadth, courts have recognized that the circumstances and nature of the activity under investigation dictate the specificity with which a warrant may be drawn, and thus have held that "[t]he proper metric . . . is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation." *United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000); *see United States v. Timpani*, 665 F.2d 1, 5 (1st Cir. 1981) ("'When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of the items he is seeking.'" (citation omitted)). Courts addressing overbreadth challenges have upheld general descriptions in warrants "when the

surrounding circumstances render it reasonable" as determined by a two-part test. *See United States v. Morris*, 977 F.2d 677, 681 (1st Cir. 1992) (citing *United States v. Klein*, 565 F.2d 183 (1st Cir. 1977)). The first prong of the test is "the degree to which the evidence presented to the magistrate establishes reason to believe that a large collection of similar contraband is present on the premises to be searched." *Id.* The second prong then weighs "the extent to which, in view of the possibilities, the warrant distinguishes or provides the executing agents with criteria for distinguishing the contraband from the rest of an individual's possessions." *Id.* Few cases explicitly apply the two-part test, but a survey of First Circuit particularity decisions provide general principles to guide me in applying each prong.

   1.   *The First Prong: Evidence of Other Contraband*

The degree to which evidence of contraband is believed to be on the premises is largely connected to the pervasiveness of the illegal activity being investigated. In *United States v. Brien*, for example, affidavits submitted with a warrant application detailed an extensive fraudulent sales scheme involving consistent patterns of deceptive conduct and two hundred and fifty complaints. The First Circuit noted that:

> the mail and wire fraud statutes focus on the scheme, not on the implementation of it. The two hundred fifty complaints were relevant to the probability that other Lloyd, Carr customers were treated similarly, as well

9

> as to whether actual fraud was committed upon the complainants. Since a scheme involves "some connotation of planning and pattern," it follows that evidence of planning and pattern may show the existence of a scheme.

617 F.2d 299, 307 (citations omitted). Thus, the First Circuit found that similarities in the practices reported in the two hundred and fifty complaints made it more likely than not that the business was using similar fraudulent techniques with most of its customers. In other words, "[t]he two hundred fifty complaints that surfaced could fairly be inferred to be only the tip of the iceberg," *id.* at 308, and the issuing judge was entitled to draw the further conclusion that the business was "solely and entirely, a scheme to defraud by use of the mails and interstate telephone calls." *Id.* at 307-08.

Pervasiveness for purposes of the first prong is not limited to large organizations or entities. *United States v. Falon*, 959 F.2d 1143, 1148 (1st Cir. 1992). Thus, in *United States v. Morris*, the First Circuit found that two illegal drug transactions at the same residential address gave the magistrate judge "sufficient evidence to believe that a large collection of similar contraband would be present in the premises that were to be searched pursuant to the warrant." 977 F.2d at 681.

   2.   *The Second Prong: Distinguishing Contraband*

As to the second prong, the principle that emerges from the First Circuit's caselaw is that a warrant is insufficiently

particular if the suspected crime being investigated and leading to the warrant application was substantially narrower than the scope of the warrant that ultimately issued. For example, the First Circuit held in *United States v. Roche* that where an affidavit in support of the warrant application made clear that only motor vehicle insurance fraud was being investigated, a warrant that authorized the seizure of documents pertaining to <u>all</u> types of insurance was overbroad because it could have been more narrowly tailored to only authorize the seizure of documents pertaining to motor vehicle insurance. 614 F.2d 6, 7 (1st Cir. 1980).[2] In other words, where there is "information available to the agents which could have served to narrow the scope of the warrant and protect the defendant['s] personal rights" but the

---

[2] *See also United States v. Fuccillo*, 808 F.2d 173, 176-77 (1st Cir. 1987) (finding warrant deficient where the stolen goods at issue were women's clothing from Casual Corner stores and Women's Specialty Retailing, but the warrant directed agents to seize "cartons of women's clothing," which resulted in agents removing the entire contents of a warehouse); *In re Lafayette Academy, Inc.*, 610 F.2d 1, 3-4 (1st Cir. 1979) (finding warrant deficient where investigators had probable cause to believe that a school committed fraud pertaining only to the Federal Insured Student Loan Program [FISLP], but warrant authorized a search of any document constituting evidence of any conspiracy or fraud; holding that "at a minimum, the precise nature of the fraud and conspiracy offenses for evidence of which the search was authorized---fraud and conspiracy in the FISLP---needed to be stated in order to delimit the broad categories of documentary material and thus to meet the particularity requirement of the fourth amendment."); *Montilla Records of Puerto Rico v. Morales*, 575 F.2d 324, 326-27 (1st Cir. 1978) (finding warrant deficient where the illegally manufactured goods were Motown records with distinctive labels, but the warrant directed agents to seize all "unauthorized or illegal recordings" with no limitation).

information is either withheld from the magistrate or not included in the warrant, "the warrant [is] inadequate." *Klein*, 565 F.2d at 190.

But where the warrant's list of items to be seized is tailored to the specific crime being investigated, it will survive an overbreadth challenge under the second prong. For example, the First Circuit upheld a warrant against a particularity challenge where it provided for the seizure of all documents relating to a list of seventeen individuals that constituted evidence of the specific suspected crime of conspiring to defraud the Social Security Administration. *United States v. Bithoney*, 631 F.2d 1, 2 (1st Cir. 1980).

Even a broad search warrant authorizing the seizure of all of a business's records may be sufficiently particular if the fraud alleged is pervasive such that most, if not all, of the business is suspected of being linked to a mail and wire fraud scheme. This is intimately connected to the scope of the fraud which factors heavily into the first prong analysis. *See Brien*, 617 F.2d at 306-08. In *Brien*, as noted above, affidavits submitted with the warrant application demonstrated that the fraud in the business was pervasive. The First Circuit held that "where there . . . exists a pervasive scheme to defraud, <u>all</u> the business records of an enterprise may be seized, if they are, as here, accurately described so that the executing officers have no

need to exercise their own judgment as to what should be seized."
*Id.* at 309 (emphasis added).

The First Circuit has rejected the suggestion that such an "all records" rule only applies to organizational entities, and has explicitly applied it to individuals. *Falon*, 959 F.2d at 1148 (noting "that it would be an odd quirk in the law if, by doing fraudulent business as an individual rather than as a corporation or company, one could ensure his premises against an 'all records' search" and rejecting the "suggestion that the *Brien* holding applies only to 'organizational entities'"); *see also United States v. Timpani*, 665 F.2d 1, 4-5 (1st Cir. 1981) (applying the "all records" rule to a search for loansharking and gambling evidence in an individual's home).

However, the First Circuit has warned district courts applying the doctrine to individuals to do so "with caution." *Falon*, 959 F.2d at 1148. In this connection, the First Circuit has counseled issuing judges that "the broad categories of items that may be seized pursuant to an 'all records' search of a home must be sufficiently linked to the alleged criminal activity so as to distinguish them from innocent, personal materials." *Id.*

B. <u>Application</u>

   *1. Warrant as a Whole*

   Here, the only developed challenge to the warrant in Kuc's motion is that the phrase "including, without limitation" made

the warrant impermissibly broad.[3] However, the phrase "including, without limitation" was tied directly to the specific crimes of 18 U.S.C. §§ 1343 (wire fraud), 2314 (interstate transportation of stolen property), 2315 (storage and sale of stolen property in interstate commerce), and 2 (aiding and abetting), thus limiting the discretion of the officers executing the search warrant. As a general proposition, that is all that is required. *Andresen v. Maryland*, 427 U.S. 463, 479-82 (1976) (upholding search warrant against particularity challenge because the challenged phrase authorizing the seizure of "fruits, instrumentalities and evidence of crime at this (time) unknown" clearly related to the particular crime of false pretenses giving rise to the probable cause supporting the search warrant application). *See United States v. Grimmett*, 439 F.3d 1263, 1271 (10th Cir. 2006) (finding that warrant was not overbroad because it required a nexus between the items to be seized and the crime alleged); *see also Bithoney*, 631 F.3d at 3 n.1 (upholding a search warrant against a particularity challenge because the

---

[3] Kuc noted in a footnote in his motion that he thought some of the twenty-three enumerated categories of items to be seized in the warrant were "overly broad," but failed to identify these categories with which he took issue. He also failed to provide any legal support for such an argument. *See* Mot. Supp. Warrant Search at 2 n.1, Dkt. No. 42. Nevertheless, at the hearing in this matter I inquired as to the specific categories to which he objected and will address his bare bones contention in this memorandum to assure complete consideration of his motion to suppress.

14

challenged phrase authorizing the seizure of "other papers," and other such "general tail[s] of the search warrant," are "construed so as not to defeat the particularity of the main body of the warrant").

As with the warrants in *Andresen*, *Grimmett*, and *Bithoney*, here the phrase "including, without limitation" has a direct nexus with the crimes alleged and precedes a list of twenty-three categories of things to be seized. Such a warrant is sufficiently particular to survive a constitutional challenge.

    *2. Specific Categories*

Turning to the particular categories of concern Kuc identified at his hearing, the broad principles drawn from the caselaw offer him no grounds for relief. At oral argument, Kuc identified five categories of records in the warrant that he thought were overbroad: (1) "Records and tangible objects related to" the aliases used in the allegedly fraudulent scheme; (2) "Records and tangible objects related to" the variations on Kuc's home address and the UPS box address that he used in the scheme; (3) "e-mail to, from, or about" the e-mail addresses used in connection with the scheme; (4) "Tax records for any of the people or companies identified above"; and (5) "Records relating to travel of any of the people or companies identified above". All survive Kuc's overbreadth challenge.

Here, under the first prong of the First Circuit's overbreadth test, there was more than sufficient evidence presented in the warrant application to give the magistrate reason to believe that a large collection of computer parts and other evidence would be found at Kuc's home address linking him to the mail and wire fraud scheme alleged. Agents investigating Kuc's scheme knew that Kuc used the aliases alleged in the warrant and shipping addresses which were variations on his home address and boxes registered to himself or his aliases to request replacement parts from computer manufacturers and then re-sell them on Ebay. Agents initially learned of Kuc's scheme from investigators working for one of the defrauded computer companies, who linked numerous fraudulent part requests and resales to Kuc, Kuc's Ebay account, and his home address. FBI agents then discovered Kuc's Ebay store was selling parts from other computer manufacturers, and set up a controlled buy of a number of computer parts from the store, linking Kuc's home address, e-mail address and phone number, Ebay store, and PayPal account to the fraudulently-obtained computer parts. As in *Morris*, that is more than enough to give the magistrate "sufficient evidence to believe that a large collection of similar contraband would be present in the premises that were to be searched pursuant to the warrant." *Morris*, 977 F.2d at 681.

Under the second prong of the test, in light of the pervasiveness of the fraud, an all-records search was reasonable under the circumstances and the warrant was drafted as narrowly as possible to track the fraud alleged. The fraud alleged involved parts from at least four computer companies, and Kuc used at least forty-five aliases, eight variations on his home address, three variations on the address of the box he was renting, and eight e-mail addresses. The warrant authorized the seizure of all records constituting evidence of violations of wire fraud, interstate transportation of stolen property, storage and sale of stolen property in interstate commerce, and aiding and abetting laws, related to the aliases and addresses. This was reasonable because it delineated the scope of the pervasive fraud, and no narrower formulation could have been provided to the magistrate. *See Timpani*, 665 F.2d at 5 ("'When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the generic class of the items he is seeking.'" (citation omitted)). With specific reference to computer searches, the First Circuit has recently reiterated that it has "rejected the idea that government agents should [artificially] restrict their searches of digital devices." *United States v. Farlow*, - - - F.3d - - -, 2012 WL 1957990 at *4 (1st Cir. June 1, 2012). This approach

reflects the recognition that "computer files are highly manipulable." *Id*. (citing *United States v. Crespo-Ríos*, 645 F.3d 37, 43-44 (1st Cir. 2011)). Thus, Kuc's overbreadth objection to specific categories of records in the warrant fails.

Finally, even if a particularity challenge were viable, suppression would be unwarranted because the warrant as a whole was not so deficient "as to render official belief in its [validity] entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984). Under *Leon*'s good-faith test, if an officer conducts a search pursuant to a warrant, a later-discovered deficiency in the warrant will require suppression of the evidence obtained pursuant thereto only if "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* n.23. Here, even if I found that portions of the warrant were overbroad, a reasonable officer would not have known that the search was illegal, and thus suppression would be unwarranted. *See United States v. Jenkins*, --- F.3d ----, 2012 WL 1868758, at *5 (1st Cir. May 23, 2012).

### III. CONCLUSION

For the reasons set forth above, I DENY Kuc's motion to suppress search of his home (Dkt. No. 42) and treat Kuc's motion to suppress his statements (Dkt. No. 43) as moot.

/s/ Douglas P. Woodlock
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT