**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**UNITED STATES OF AMERICA**

**v.**

**MATTHEW J. KUC,**
                **Defendant.**

**Criminal Case No. 11-CR-10014-DPW**

## GOVERNMENT'S OPPOSITION TO MOTION FOR ACQUITTAL

The Court should summarily[1] deny Defendant's motion for acquittal, because the evidence was sufficient to convict him on each count.

"The standard for judicial examination of the sufficiency of the evidence before the jury to support a guilty verdict requires the Court to: view the evidence in the light most favorable to the government.[]  Drawing all legitimate inferences which tend to support the government's case and resolving any conflicts in the evidence against the defendant the task is to determine whether the evidence in its totality, taken in the light most flattering to the government, together with all legitimate inferences to be drawn therefrom, are enough that a rational trier of the facts could have found the appellant guilty beyond any reasonable doubt."  *United States v. Dray*, 659 F. Supp. 1426, 1438 (D. Mass. 1987) (Woodlock, J.) (citations, alterations, and internal quotation marks omitted).

---

[1] The United States has responded briefly to Defendant's very brief motion.  If more expansive briefing or oral argument would assist the Court in deciding the motion, the United States requests leave to do so.

**Counts 1, 2, 4, and 5[2] - 18 U.S.C. § 1343 (Wire Fraud)**

Defendant's convictions for wire fraud on Counts 1, 2, 4, and 5 were amply supported by the evidence and legitimate inferences therefrom.

To find Defendant guilty of wire fraud, the jury must have found beyond a reasonable doubt that (1) there was a scheme, substantially as charged in the Indictment, to defraud or obtain money or property by means of false or fraudulent pretenses; (2) the scheme involved a false statement, representation or concealment about material facts; (3) Defendant participated in the scheme knowingly and willfully with the intent to defraud; and (4) the use of interstate wire communications, on or about the date alleged, in furtherance of the scheme.  *See First Circuit Pattern Jury Instructions (Criminal)*, No. 4.18.1343 (1998); *Neder v. United States*, 527 U.S. 1, 25 (1999).

In the light most favorable to the government, the testimony and evidence at trial proved that from 2005 through his arrest on December 14, 2010, Defendant repeatedly asked computer companies by telephone or Internet communications to replace computer equipment that he claimed was broken, but which was actually unbroken and which he did not own or have the responsibility for servicing.  He asked the companies to ship the replacement equipment to four addresses:  his home at 36 Laurelwood Drive, North Attleborough, Massachusetts; his office at Sensible Computers at 247 Maple Street, Attleborough, Massachusetts; a friend's office at 42 Union Street, Attleborough, Massachusetts; and a mailbox he rented at a UPS Store at 2130 Mendon Road, Suite 3-377, Cumberland, Rhode Island, a short drive from Defendant's home.

---

[2] The Government identifies these counts as they are numbered in the Superseding Indictment, rather than in the consecutively-numbered Indictment for Jury Use.

The computer companies generally sent replacements on the understanding that their customers would return the broken equipment.  Defendant took advantage of the fact that the computer companies, for purposes of customer satisfaction and out of customer trust, would ship a replacement before receiving the broken equipment.  Kuc generally did not return the broken equipment because he did not have it.  Once he received the warranty replacement equipment, Defendant sold it through "Total Asset Recovery."  Defendant obfuscated the scheme and his involvement in the scheme by ordering the equipment using numerous aliases and variations on his shipping addresses to make it appear as if equipment destined for one of his addresses was actually destined for different locations.  These variations made it more difficult for the companies to be certain that Defendant's orders were made by the same person, which helped Defendant perpetuate the scheme.  The interstate wires consisted of the electronic chat sessions between Defendant and Dell in Exhibits 1-4.

These facts were established by, among other things, the testimony of the representatives from Dell, Hewlett-Packard, Lenovo, and 3Com; the data about the transactions that they provided, Exhibits 5-8, 9, and 13, and the analyses of this data, Exhibits 26-32; the testimony of witnesses who tied Defendant to the various shipping addresses:  Ms. Williams, Special Agent De Lair, Mr. Samuel, and Mr. Di Ciaccio; the testimony of the actual owners of the equipment that Defendant claimed to have in Exhibits 1-4 (Ms. Backhaus and Messrs. Rubin, Olson, and Wisener), and the photographs of the actual equipment, Exhibits 41-44; the large quantity of evidence found at Defendant's residence, Exhibits 45-66; the large quantity of evidence found on Defendant's computer, Exhibits 70-79; and other sundry records and exhibits introduced throughout the trial.

From all this evidence, a rational juror could reasonably have found beyond a reasonable doubt that Defendant knowingly and willfully participated in a scheme to defraud that involved a false statements, representations and concealment about material facts and the use of interstate wire communications, on or about the date alleged, in furtherance of the scheme.

**Count 6 - 18 U.S.C. § 2315 (Receipt, Possession, and Storage of Stolen Property in Interstate Commerce)**

Defendant's conviction for the receipt, possession, and storage of stolen property in interstate commerce on Count 6 was also amply supported by the evidence and legitimate inferences therefrom.

To convict Defendant of the receipt, possession, and storage of stolen property in interstate commerce, the jury must have found beyond a reasonable doubt that (1) the goods, wares, and merchandise found in Defendant's house on the day of the search were stolen, converted or taken by fraud; (2) that Defendant received, possessed, or stored the property; (3) that the property had moved in, or was a part of, interstate commerce; (4) that the property was worth $5,000 or more; and (5) that Defendant knew the property had been stolen, converted or unlawfully taken. *See Modern Federal Jury Instructions-Criminal* § 54.06.

In the light most favorable to the government, the testimony and evidence at trial proved that on December 14, 2010, Defendant had about 170 boxes of computer equipment in his house. The boxes had been delivered to Massachusetts and Rhode Island from addresses outside those states. (The boxes' shipping and receiving addresses are listed in Exhibit 60.) The boxes had the same names, companies, address and variations thereof that Defendant used during the scheme to defraud. And according to Exhibit 32 and the analysis and testimony of Mr. Zappala, those items were worth well above $5,000.

4

All these facts were established by the same evidence and testimony as supported the conviction on wire fraud, with the addition of the aforementioned Exhibit 32.  A rational trier of facts could therefore have found beyond a reasonable doubt that Defendant was guilty of receiving, storing, and possessing stolen property in interstate commerce.

**Count Seven - 18 U.S.C. § 1028A (Aggravated Identity Theft)**

Defendant's conviction for aggravated identity theft on Count 7 was also amply supported by the evidence.

To convict Defendant of aggravated identity theft, the jury must have found beyond a reasonable doubt that (1) Defendant committed wire fraud or mail fraud; (2) during and in relation to the fraud, Defendant knowingly transferred, possessed, or used Francisco Samuel's name, alone or in combination with his business name and address and variations thereof, without lawful authority; (3) that Francisco Samuel was a real person; and (4) Defendant knew that the means of identification belonged to another real person.  *See* 18 U.S.C. §1028A; *The Honorable D. Brock Hornby's Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit* No. 4.18.1028A.

In the light most favorable to the government, the facts and testimony at trial established that Defendant used Mr. Samuel's name (his real name, without variation) at his business address and other addresses.  The facts and testimony also established that although Mr. Samuel may have given Defendant permission to use his name at his business address, he never gave Defendant permission to use it for fraud or for shipments to any other addresses.  These facts were clearly established by Mr. Samuel's testimony.  Defendant's use of Mr. Samuel's name was established through the various company spreadsheets, Exhibits 5-8, 9, 13, and the analysis of

these uses in Exhibit 29.

Defendant's first ground for acquittal, a name is not a "means of identification" under the statute, must be overruled because "[i]n . . . Section 1028A— . . . [¶](7) the term 'means of identification' means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—[¶](A) name . . ."  18 U.S.C. § 1028(d)(7).  That definition applies here to Mr. Samuel's name, alone and in combination with various business names and addresses.  The motion for acquittal on this ground should be denied.

Defendant's second ground for acquittal, Mr. Samuel's permission, should be overruled because his permission is not relevant.  As the First Circuit held in *United States v. Ozuna-Cabrera*, 663 F.3d 496, 499 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1936, (2012), "regardless of how the means of identification is actually obtained, if its subsequent use breaks the law—specifically, during and in relation to the commission of a crime enumerated in subsection (c)—it is violative of § 1028A(a)(1)."  Thus, a defendant who bought the means of identification from the means of identification's owner, and thus used it with the owner's authority, could still be guilty of aggravated identity theft.  *Id.* at 498-501.  So what counts is not the means-of-identification owner's authority, but rather whether the Defendant' use of authority was allowed by law.  *See also United States v. Kasenge*, 660 F.3d 537, 540-41 (1st Cir. 2011).

But even were Defendant's second ground for acquittal, Mr. Samuel's authority, taken on its own terms, the motion for acquittal should still be overruled because Defendant clearly *exceeded* Samuel's authority.  In the light most favorable to the government, the evidence showed that when Mr. Samuel authorized Defendant to use his name, (1) he implicitly

authorized its use only at 42 Union Street, (2) he did not authorize its use at any other address, and (3) he did not authorize it to be used for fraud.  Defendant, however, used Mr. Samuel's name to commit fraud and he used it for shipments to addresses other than 42 Union Street. Both uses exceeded the scope of Mr. Samuel's authority, and consequently those uses violated the aggravated identity statute..  *See United States v. Abdelshafi*, 592 F.3d 602, 606-10 (4th Cir.), *cert. denied,* 131 S. Ct. 182 (2010) (affirming aggravated identity theft conviction), *cited with approval by Ozuna-Cabrera*, 663 F.3d at 500-01; *see especially Abdelshafi,* 592 F.3d at 609 ("While Abdelshafi had authority to possess the Medicaid identification numbers, he had *no* authority to use them unlawfully so as to perpetuate a fraud.").

**Conclusion**

For the reasons given above, Defendant's motion for acquittal should be denied.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:     */s/ Scott L. Garland*
Scott L. Garland
Amy Harman Burkart
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document, will be filed through the ECF system and send thereby to the registered participants as identified on the Notice of Electronic Filing.

 */s/ Scott L. Garland*
Scott L. Garland
Assistant United States Attorney

Date:   July 17, 2012