UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Criminal Docket |
| vs. | ) No. 1:11-cr-10014-DPW-1 |
| | ) February 21, 2012 |
| MATTHEW J. KUC, | ) @2:00 p.m. |
| | ) |
| Defendant. | ) |
| | ) |

INITIAL PRETRIAL CONFERENCE

BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

John Joseph Moakley United States Courthouse
1 Courthouse Way, Courtroom No. 1
Boston, MA  02210

Helana E. Kline, RMR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
1 Courthouse Way, Room 5209
Boston, MA  02210

APPEARANCES:


For the Plaintiff:

United States Attorney's Office
(By:  Sarah E. Walters, Attorney at Law)
1 Courthouse Way, Suite 9200
Boston, Massachusetts  02110
(617) 748-3130


For the Defendant:

Law Office of Robert L. Sheketoff
(By:   Robert L. Sheketoff, Attorney at Law)
One McKinley Square
Boston, Massachusetts  02109
(617) 367-3449

```
1                    P R O C E E D I N G S

2            THE CLERK:  All rise.  This Honorable Court is now

3    in session.  You may be seated.  This is Criminal Action

4    11-10014, the United States versus Matthew Kuc.

5            THE COURT:  So is this ready for trial?

6            MR. SHEKETOFF:  This is as good a place to try it, I

7    think as good as any place, isn't it?

8            THE COURT:  Is this case going to trial?

9            MR. SHEKETOFF:  Yes.

10           THE COURT:  And what's the motion to suppress about?

11           MR. SHEKETOFF:  A search of his computers and his

12   home.  I'm not positive.  I haven't filed it yet.  I think

13   I have until March.

14           THE COURT:  March 1st is when the date is, but the

15   progress report, the status report, was it without a warrant?

16   I don't know enough about it.  Was there a warrant in

17   connection with the --

18           MR. SHEKETOFF:  Oh, yeah, correct, but it's that the

19   good faith exception sort of evaporated.

20           THE COURT:  Well, I thought rather than evaporated it

21   had enveloped, but perhaps I missed something?

22           MR. SHEKETOFF:  I had someone drive by my house, and

23   she explained to us when the farmer next-door to us figured

24   out that she had had a criminal case in the District of

25   Massachusetts she said she had been exonerated, but when I
```

1    looked up the case on the, on PACER, it turned out she had

2    been incarcerated so --

3        THE COURT:  Oh, it depends how you define

4    "exonerated."  In any event, so this is some sort of good --

5    not a good faith exception?

6        MR. SHEKETOFF:  It's unlikely that I'm going to file

7    it, your Honor.  I just haven't made up my mind completely.

8        THE COURT:  Let me understand what the theory is

9    here.  I'm not sure I understand from this.  I always think

10   of what you've done before, but I had a case called Digital

11   way back when in which someone was -- there was a theft of

12   equipment but they had created an aftermarket for companies

13   that didn't want aftermarket or at least they wanted to be

14   totally aftermarket.  Is that what this is?

15       MS. WALTERS:  Not completely.  There's elements of

16   that, definitely.  These computer companies, the sort of

17   customer service point will, when you call up and say:

18   My keyboard, which is not working, Dell, and this is the

19   serial number that's on it, Dell will look up to see if

20   it's still under warranty.  Because the warranty travels

21   with the keyboard so even if I were to buy the keyboard but

22   I were to sell it to Mr. Sheketoff and then Mr. Sheketoff a

23   year into his owning it, if it's still under warranty, the

24   name might -- the purchaser name doesn't matter if it's

25   still under warranty.  So that the company will look up to

1    make sure it's still under warranty and then go ahead and

2    send out a replacement part for it; and as part of the

3    instructions to the recipient, you just need to send us

4    back the defective keyboard because there are things that

5    they can do to make it better, junk it, or use it for parts

6    or something like that.

7        And what the allegations are as to the defendant is

8    that he was getting serial numbers; and to be perfectly

9    open about it, I discussed this with Mr. Sheketoff, the

10   government's not entirely clear how he would get these

11   legitimate serial numbers for parts that were still under

12   warranty.  He would call up Dell or these other companies,

13   give them the serial number, say:  I've got this keyboard,

14   it's defective.  They would try to help him fix it.

15       When they couldn't do that, they would send out the part.

16   The requirement being that it'd be shipped back; and the

17   notifications that go out to the consumer is that if you

18   don't ship it back, we're going to bill you for the full

19   price of the keyboard.  And he then, of course, he wouldn't

20   ship it back and -- but he would use aliases while doing

21   this.  He would make certain misrepresentations that he, in

22   fact, had the keyboard when he didn't.  And we went out, and

23   interviewed people, the actual true owners of these, of these

24   computer parts that would say:  Yes, on the date that this

25   service call was placed, it was sitting in my office.  I

1   never made the warranty.

2          THE COURT:  What's involved here?

3          MS. WALTERS:  The lawsuit at the heart that we're

4   talking about is over a million dollars worth of parts that

5   were shipped.  He was very systematic.

6          THE COURT:  These weren't just keyboards then?

7          MS. WALTERS:  These were not just keyboards then,

8   your Honor, you're right.  These were much more expensive.

9   Scott Garland is also involved with the case; he is the

10  computer expert and has, you know, better knowledge about

11  the parts are, but you're right.  They're not just keyboards;

12  they were much bigger parts.  In fact, he's very computer

13  savvy.  He worked in a computer store.  He had his own

14  computer business.

15         THE COURT:  So was he then engaging in resale, is

16  that what he was doing?

17         MS. WALTERS:  Yes.  He maintained an eBay store where

18  he would resell parts, and, you know, the allegation is that,

19  you know, this was one of the ways he would get parts to

20  resell on eBay, and millions of dollars passed through that

21  eBay account with this store.

22         THE COURT:  So how long to try it?

23         MS. WALTERS:  We estimate eight to ten days.  I think

24  it's going to be more toward the eight days, maybe even less

25  as we refine things as we're getting closer to trial.

1       I'm estimating roughly 25 witnesses, some of whom are

2   civilians who will be very short; others will be more in

3   summary form like the witnesses from the computer companies

4   are going to explain this process a little bit more.  So I

5   think it's going to be longer than a week possibly with

6   9 to 1 days, but hopefully a little less than 10 days.

7           THE COURT:  Okay.  So September?

8           MS. WALTERS:  Would it be possible to do it more

9   towards the end of September?

10          THE COURT:  I don't think so, but let me just

11  check.  You said the end of September or --

12          MS. WALTERS:  Just the latter half would be better.

13          THE COURT:  How about if I said the 17th?

14          MS. WALTERS:  That would be fine, your Honor.

15          THE COURT:  Okay.  How about you, Mr. Sheketoff?

16          MR. SHEKETOFF:  That's fine.

17          THE COURT:  Okay.  So I'm going to, you know, carve

18  out those two weeks as trial weeks.  I may slip something in

19  to take a jury in on the 24th but --

20          MS. WALTERS:  Okay.

21          THE COURT:  -- that shouldn't affect you, but

22  that's a real date on the assumption that this is a real

23  trial.  And then Mr. Sheketoff, you'll think about whether

24  you're going to file the motion to suppress; and if it's

25  not filed by the 1st, then I won't sort of be looking forward

1    to it any longer.

2           MR. SHEKETOFF:  I understand, your Honor.

3           THE COURT:  Is there anything else that we need to

4    talk about apart from, I assume excluding the time from the

5    trial date that I just set?

6           MS. WALTERS:  Nothing else from the government.

7           MR. Sheketoff:  I don't believe so, your Honor, and

8    I assent to exclude the time.

9           THE COURT:  All right.  Then if there's nothing

10   further, we'll be in recess.  Thank you.

11           THE CLERK:  All rise.

12           (Whereupon, the proceedings concluded at 2:10 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3         I, Helana E. Kline, a Registered Merit Reporter,

4    Certified Realtime Reporter, and Federal Official Court

5    Reporter of the United States District Court, do hereby

6    certify that the foregoing transcript, from Page 1 to

7    Page 9, constitutes, to the best of my skill and ability,

8    a true and accurate transcription of my stenotype notes

9    taken in the matter of the United States of America v.

10   Matthew J. Kuc.

11

12

13

14

15

16

17

18

19

20

21

22      /s/ Helana E. Kline                 January 18, 2012

23      Helana E. Kline, RMR, CRR

24      Federal Official Court Reporter

25