1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3

4    THE UNITED STATES OF AMERICA      )
                                       )
5                                      )
                                       )
6    vs.                               )  No.
                                       )  1:11-cr-10014-DPW-1
7                                      )
     MATTHEW J. KUC,                   )
8                                      )
                         Defendant.    )
9


10
     BEFORE:  THE HONORABLE DOUGLAS P. WOODLOCK
11

12
                          PRETRIAL CONFERENCE
13

14

15
             John Joseph Moakley United States Courthouse
16                         Courtroom No. 1
                          One Courthouse Way
17                        Boston, MA 02210
                        Monday, June 18, 2012
18                           2:20 p.m.

19

20

21              Brenda K. Hancock, RMR, CRR
                     Official Court Reporter
22         John Joseph Moakley United States Courthouse
                       One Courthouse Way
23                     Boston, MA 02210
                        (617)439-3214
24

25

1   APPEARANCES:

2       UNITED STATES ATTORNEY'S OFFICE
        By:  AUSA Amy H. Burkart
3            AUSA Scott Garland
        Suite 9200
4       Boston, MA 02210
        On behalf of the United States of America
5
        ROBERT L. SHEKETOFF, ESQ.
6       One McKinley Square
        Boston, MA 02109
7       On behalf of the Defendant.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    (The following proceedings were held in open court

2        before the Honorable Douglas P. Woodlock, United States

3        District Judge, United States District Court, District of

4        Massachusetts, at the John J. Moakley United States Courthouse,

5        One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6        Monday, June 18, 2012):

7                    THE CLERK:  All rise.

8             (The Honorable Court entered the courtroom at 2:20 p.m.)

9                    THE CLERK:  This is Criminal Action 11-cr-10014, The

10       United States Versus Matthew Kuc.

11                   THE COURT:  Well, I am not sure what to make of the

12       Government's desire to introduce additional evidence in this

13       case.  I think my view is that there is only so much that can

14       come in as a practical sort of matter, and so I am a little

15       concerned about that.  Maybe one of you can tell me how it is

16       going to come in without taking a lot of time.

17                   MR. GARLAND:  Your Honor, I would be happy to.  The

18       way we planned to -- there are four charged counts of Wire

19       Fraud.  There are the individual instances where we have talked

20       about the chats.  That information is going to come in through

21       Dell, which will say --

22                   THE COURT:  No, I think I understand how it is going

23       to come in.  The question for me is whether or not I let you

24       expand beyond what has been identified in the indictment as the

25       conduct here and, if so, why I should do that, because it seems

1    to me that you are adding a bunch of substantive counts here.

2    They are not counts, but they amount to the same sort of thing.

3         MR. GARLAND:  Right.  I think, first of all, there is

4    the stolen goods count.  That stolen goods count covers a

5    number of boxes, about 170 -- between 150 and 170 boxes there

6    for both the Mail Fraud counts and the Wire Fraud counts, and

7    for that we have got to show that there was a scheme to

8    basically obtain these things --

9         THE COURT:  I know what you have to show.  The thing

10   is this is a little bit like the question if you want to do a

11   movie about sleep, do you photograph somebody for 24 hours

12   sleeping?  A little bit of editorial finesse should be used,

13   and maybe the finesse that should be used is those things

14   precisely that you have to prove in this case, and then I will

15   wait and see what kind of defense is put on, and maybe I will

16   let you have rebuttal, and maybe I will not.  But just because

17   somebody starts looking more carefully at the evidence in the

18   case and decides, oh, here is some more, does not mean that it

19   gets put into the case.

20        MR. GARLAND:  Well, is your Honor addressing the

21   Schneider/APC stuff or the additional Dell stuff?

22        THE COURT:  Both, both.  This is just piling on.

23        MR. GARLAND:  I think the way that the information is

24   going to come in for the other counts, it's very much like the

25   -- I think it's the McGauley case that you heard a while back.

1          THE COURT:  I have some familiarity with how we try a

2     fraud case and also how one can really jam up the works by

3     putting in every bit of piece of paper that touches on relevant

4     conduct.

5          MR. GARLAND:  Understood.

6          THE COURT:  Relevant conduct, not the charge itself.

7     So, I look at this, and I think come on.

8          MR. GARLAND:  I think the way the Government intends

9     to do that to keep it very streamlined, your Honor, is not to

10    put in chat after chat after chat after chat.

11         THE COURT:  That is a beginning, certainly.  And I

12    agree with you, you should not put in chat after chat after

13    chat after chat.  The question is whether you put

14    chat...chat...chat...chat..., and that is what this appears to

15    be.

16         MR. GARLAND:  That is not what the Government intends.

17    The one additional chat that we were talking about is one from

18    Schneider APC.  The importance of that chat, and if the only

19    thing that we got in from Schneider APC was that chat, is the

20    fact that early on in the scheme Matt Kuc is typing to the

21    people at Schneider asking for another part, and when they ask

22    him for the place where they are supposed to send it to, he

23    says "Matt Kuc."  He uses his real name, Matt K-u-c, and then

24    he goes and he says, "Oh, wait a minute.  It's Matt Cook,"

25    C-o-o-k.  The fact that he changes it to that is important to

1    rebut the possible allegation of the defense about mistake --

2         THE COURT:  I think you have hit it right on the head,

3    which is, it is important to rebut, depending on what it is

4    that you are rebutting.  You did not charge it, right?

5         MR. GARLAND:  APC specifically, no.

6         THE COURT:  So, people make choices, or maybe they do

7    not, but, in any event, like Satchel Paige, you will not get to

8    look back on this.  You get to put in your case in a very

9    streamlined way, which is the case that you charged.  I will

10   listen very carefully to see what kinds of defenses come in, if

11   any, what kinds of suggestions are made during the course of

12   cross-examination of the Government's witnesses.  But we are

13   not going to get into this thing kind of like the *Sorcerer's*

14   *Apprentice*, just creating more and more broomsticks.

15        MR. GARLAND:  And that is not what the Government

16   intends either.  For the rest of the transactions for the

17   counts and for the companies that are mentioned specifically in

18   the indictment, Dell, Lenovo, HP and 3COM, the intent is to

19   show most of those transactions in a summary spreadsheet form

20   and not to go through every entry, because that wouldn't make

21   any sense whatsoever, but to take the company representative

22   through it, how was this information assembled, where did the

23   information come from, lay the foundation for it to be admitted

24   as business records or a summary of business records printed

25   out from their databases.  And the jury is going to have the

1    ability when they look at that spreadsheet to see that there is

2    a variety of names and addresses, just as what is charged in

3    the indictment, and that I think will also show the intent to

4    defraud as well.

5         THE COURT:  No doubt, no doubt.  So, you do not need

6    any extra stuff for your case in chief.  You will make it over

7    the bar on that, if you are right, and, as I said, I will

8    listen to this, but I just do not want to see this thing

9    growing like topsy.

10        MR. GARLAND:  In fact, today we are even talking about

11   a way to eliminate one witness as well.

12        THE COURT:  You mean not use that witness.

13                       (Laughter)

14        MR. GARLAND:  No, your Honor.  Eliminating the witness

15   would be a crime, and we don't condone that.

16        THE COURT:  That is not relevant conduct I am going to

17   let you get in either.

18                       (Laughter)

19        MR. GARLAND:  But we are trying to do that.  There are

20   some things that we want to show, obviously, of the stuff that

21   was found in his house, because it is relevant to the stolen

22   goods count, possession and receipt.  It also shows that he is

23   the guy who was doing the interactions with the companies.

24   But, again, we are trying to be very judicious and pare it

25   down.

1          THE COURT:  And I will help you in that endeavor.

2          MR. GARLAND:  Absolutely, yes.  So, I think that it

3    will come in in an efficient way.  We are doing that as best as

4    we can.

5          THE COURT:  Well, forewarned that I probably take a

6    much more austere view than you do about uncharged conduct

7    coming in in this case until I hear some suggestion that it was

8    a mistake of some sort in the defense case.  Now, maybe I will

9    hear that very early on, and maybe you will get to get a little

10   bit more stuff in, but this is not going to go on forever or

11   even for very long.

12         So, the short of it is my advice is that with respect

13   to both of these motions *in limine* is that I am not allowing

14   them, but I will consider the effort to introduce evidence in

15   the context of whatever defenses are provided.

16         MR. GARLAND:  Understood, yes.

17         THE COURT:  All right.  So, then, let us turn to the

18   kind of timing issues.

19         What kind of a case do you think you are going to put

20   on, Mr. Sheketoff?

21         MR. SHEKETOFF:  Well, it is always possible, because

22   it's the defendant's choice, that he will testify.

23         THE COURT:  Does he have a record at all?

24         MR. SHEKETOFF:  No.  But if he were to testify he

25   would be my only witness.

1          THE COURT:  Is it really seven to nine days?

2          MR. SHEKETOFF:  Your Honor, there is one witness they

3     plan to call as a colleague/friend of my client's.  They say he

4     used his name inappropriately, and that's a separate count.

5     That witness I can see cross-examining for some significant

6     period of time.  By that, I mean an hour.  But I do not

7     envision cross-examining any other witness for anywhere

8     approaching that amount of time.

9          There is not that much, from my point of view, in

10    controversy in this case.  It is more of an interpretation of

11    the evidence as opposed to, no, he didn't have these phone

12    numbers, no, he didn't use these different names, no, his

13    parents might have done this.  There is going to be none of

14    that.  It is all a matter of interpretation, I believe.

15         So, I don't think it's going to go seven days, but

16    they're in charge of much of the case.

17         THE COURT:  Well, I am just wondering what I am going

18    to say to the jury.  We have got this holiday plunked down in

19    the middle of the week, and I would be inclined to look for a

20    jury that just takes Wednesdays off, but I am not sure how many

21    of those people I am going to find.

22         MR. SHEKETOFF:  Your Honor, we had discussed, the

23    Government and I, the possibility of sitting some afternoons,

24    if that was available for you.

25         THE COURT:  I am not sure that it is, but let me just

1 | double-check.

2 | MS. BURKART:  Particularly, your Honor, on Tuesday we

3 | have a lot of out-of-state witnesses coming who own the pieces

4 | of equipment, the Tuesday of trial.

5 | THE COURT:  Well, I can probably fool around with the

6 | schedule.  Well, the first thing is, I will give you that

7 | Tuesday.  I am going to have to fool around with the schedule a

8 | little bit to do that, but just assume that you are going to

9 | sit the full day, that is, 9:00 to 1:00 and 2:00 to 4:00 on

10 | Tuesday and, while we are at it, Monday as well, and then we

11 | will see what it looks like after that.  It will not be a full

12 | day on Wednesday, and I have got a pretty heavy schedule

13 | Thursday and Friday, but if that helps us march through, so

14 | much the better.

15 | But let us assume it does not get us done by Monday of

16 | the following week.  Do you have any particular scheduling

17 | needs for that?  I can give the jury a margin on either side of

18 | the holiday.  My guess is that people will take an extra long

19 | weekend; that it would be not unusual.

20 | But enough about them.  What about you?  Do any of you

21 | face particular problems in that regard?

22 | MS. BURKART:  No, your Honor.

23 | MR. GARLAND:  No.

24 | THE COURT:  Any witnesses or anything like that?

25 | MR. SHEKETOFF:  No, your Honor.

1          THE COURT:  All right.  I will think about it a little

2     bit.  But assume that you are going to be sitting full days on

3     Monday and Tuesday as we start out here and probably slipping

4     back to half days the rest of the week.

5          I look at the narrative of the Government's case, and

6     I do not think it should take that long, to be perfectly

7     candid.  There are lots of cameo appearances but not much in

8     the way of Broadway stars.

9          MS. BURKART:  Yes, your Honor.  We are working hard to

10    prune it down, and I think that is exactly what we envision,

11    that many people will be on for a very specific purpose and off

12    the stand quickly.

13         MR. GARLAND:  Your Honor, one thing that the Court

14    might want to find out about.  Until now we have been trying to

15    work on stipulations for the defendant's parents, and we

16    learned today that the defendant's parents and the defendant

17    won't stipulate to their testimony.  What they are anticipating

18    is that -- we have trial subpoenas.  My recollection is that

19    when we had them come in they required Polish interpreters

20    beforehand but that there was no language problem.  So, I have

21    put it to defense counsel as to whether we need to have a

22    Polish interpreter here.  He, like I, found that he could

23    converse with them without the benefit of that, but we're in a

24    sort of a situation we can ask them, but I don't know whether

25    the mother is even going to talk to us about that.

1          THE COURT:  What is the story?

2          MR. SHEKETOFF:  Well, the father has had two strokes,

3     and I put him in a different category than the mother.  The

4     mother I have no trouble communicating with in English.  It had

5     slipped my mind if I ever knew that she had testified to the

6     grand jury in Polish.  But the father, given the medical

7     condition, since Polish is his first language, he might need

8     it.  I have always felt that he was not all there because of

9     his medical condition.

10          The Government's trying to exclude the parents as

11    possible people that were running this business.  That is not

12    an issue in the case, your Honor.  I have told them, I will

13    make it clear in my opening, that is not an issue in the case.

14    Anything that was done was done by my client, not by his

15    parents.  So, it seems to me, if I was them, I would call the

16    mother and rely on my opening, and what is clearly going to be

17    my defense is not to shift blame to mother and father.

18          THE COURT:  What is a defense, just negligence?

19          MR. SHEKETOFF:  No.  The defense is that there was no

20    intent to defraud.  That's the defense.

21          THE COURT:  But what does that mean here?

22          MR. SHEKETOFF:  Well, I have discussed this with the

23    Government.  For instance, on the four charged counts with

24    Dell, the four remaining counts, Dell sends a packing slip when

25    you make a warranty claim that says, "Return this item," and

1  one of the things they say is, "If you don't return the item,

2  we're going to invoice you."  So, you have obligated yourself

3  to pay for the item, whether you return it or not.  I'm going

4  to argue to the jury there was no intent to defraud in those

5  circumstances.

6       THE COURT:  Well, let us go back to the Polish

7  language.  When is it that the parents, if they were called,

8  are expected to appear?

9       MR. GARLAND:  I think it would probably be around,

10  without having thought it through, because at this point

11  because we are not getting the stipulation, I think we are

12  probably talking about late Tuesday or Wednesday.

13       THE COURT:  What is the stipulation in precise words?

14       MR. GARLAND:  The stipulation was going to be that

15  there were boxes in the house, that they weren't ordered by the

16  parents, that the parents knew that there were boxes coming

17  there, they weren't the people who shipped them out either,

18  even though there are shipping records that show that a lot of

19  boxes were shipped out by the father, that the father, when he

20  was picking up the boxes from Rhode Island, was picking them up

21  for his son and not for himself.

22       As you can imagine, it is the son who is living in the

23  parents' house, and so there are a lot of accounts that might

24  be in the parents' name, but the claim here, of course, is that

25  it was the defendant and not the parents who were doing that.

1          And it may be that, depending on how Mr. Sheketoff

2     argues, that it becomes unnecessary to present their testimony

3     or to present it in an abbreviated form.

4          THE COURT:  What is the problem with the stipulation?

5          MR. SHEKETOFF:  The mother has relevant information

6     about the friend who he supposedly stole the identity of, so I

7     would prefer to cross-examine her on that topic, rather than

8     call her as my only witness in defense.  So, that is the main

9     reason.  I need her on the witness stand to ask her some

10     questions.  That is putting aside client issues, because

11     clients have to agree to these things, at least in my view.

12          THE COURT:  Mine too.

13          Well, I guess we will try to find a Polish

14     interpreter, starting on Tuesday.  Did she testify in Polish in

15     the grand jury?

16          MR. GARLAND:  My recollection is that we had one

17     there, and that the interpreter probably helped with

18     translating some of the questions.  I can't recall whether the

19     interpreter actually interpreted the answers or not.

20          THE COURT:  I am fairly open about interpreters.  If

21     somebody thinks that they are not comfortable, fully

22     comfortable in the English language, I will have an interpreter

23     present, so we will have an interpreter present here.

24          MR. GARLAND:  Thank you.

25          THE COURT:  What else do we need to talk about,

1   anything?

2          MS. BURKART:  Just a logistical issue, your Honor.

3   For exhibits during the opening, will you allow us to use

4   exhibits --

5          THE COURT:  Yes, unless there is some basis for

6   believing that they will not be received here.  I do not

7   understand that that is what I am dealing with.

8          MS. BURKART:  No.  I think there are a good number of

9   exhibits that have been opposed sort of on a not very specific

10  ground, neither relevance nor anything else.

11         THE COURT:  I guess my view is share with

12  Mr. Sheketoff what you are going to use.

13         MS. BURKART:  We have been.

14         THE COURT:  If there is a dispute about them that is

15  likely to survive mature reflection, then I will consider it,

16  but otherwise I will let you use it on the representation that

17  you have good-faith basis for believing it is going to be

18  introduced and received in evidence.

19         MS. BURKART:  Okay.  To the extent that we have

20  exhibits that the order moves at all and we would like to

21  discuss them with someone before they are admitted by someone

22  else, and we assume that there would be no problem with the

23  person who is going to be admitting them, will we be able to

24  show them before publishing them to the jury?

25         THE COURT:  Unless that becomes a Rube Goldberg

1    machine.  If there is some question about it, I will wait until

2    the person who can provide the last link of the chain is there.

3         MS. BURKART:  Yes.  It's just an example of one or two

4    I think that, because of the order, logistical issues, we might

5    want to discuss them beforehand, but I don't perceive there

6    would be a problem with them.

7         THE COURT:  Well, talk amongst yourselves about that,

8    and we will see where it goes.

9         MR. GARLAND:  Your Honor, since we dismissed and since

10   your Honor dismissed Count Three of the indictment, one thing

11   that we have done which we have seen done in other cases is to

12   take the Superseding Indictment, amend it so that the counts

13   all become sequentially numbered.

14        THE COURT:  Yes.

15        MR. GARLAND:  We have copies of that, which we can

16   submit to the Court, if you are inclined to use that.

17        THE COURT:  I think what I would suggest, although you

18   will tell me otherwise, is to do it by letters.  That way we do

19   not have "Redacted Three" and "Disappearing Three" being

20   referenced at various times.  So, if you go through it and say

21   this is Count A, Count B, Count C, that sort of thing, and then

22   we can match it up afterwards, if it comes to that, with a

23   Judgment and Commitment Order.

24        MR. GARLAND:  Does the Court -- I know in some

25   sessions the indictment goes back to the jury during

1    deliberations.

2         THE COURT:  Ordinarily, I let the indictment go back.

3    Particularly in a case such as this, I let it go back there.

4         MR. GARLAND:  Okay.

5         THE COURT:  The touchstone is can we reconstruct what

6    the indictment is.  I do not like leaving gaps in the

7    indictment so that the jury thinks that we did not give them

8    all of the pages or something like that.

9         MR. GARLAND:  So, the admitted indictment, then, just

10   to make sure that I'm clear, should say "Count A," then put the

11   different counts there, "Count B," "C" --

12        THE COURT:  Without having looked at it from an

13   editorial perspective, that is a way of dealing with that

14   issue.  It is not impossible to deem Four to be Three for

15   purposes of the indictment that is viewed by the jury and the

16   verdict slip that is returned.  I am open to any practical

17   resolution that I can keep track of.

18        MR. GARLAND:  Okay.

19        MS. BURKART:  If I may, your Honor, just from a

20   logistical perspective, there are a number of ripple effects

21   that we would have if we did the A as the summary exhibits and

22   things like that.

23        THE COURT:  So, give me a road map that says, From now

24   on what is Four is Three, what is Five is Four.  I guess that

25   is how it would work --

1        MS. BURKART:  Yes.

2        THE COURT:  -- so that we have got it clear for

3   purposes of the J and C.  It is not just for the purposes of

4   the jury, but if there is a judgment here I have got to line up

5   the judgment with the actual indictment.  The judgment at this

6   point consists of the Government dismissing Count Three, and we

7   are waiting to fill in the blanks, if it comes to that.

8        MR. GARLAND:  Okay.

9        THE COURT:  Anything else?

10       MR. GARLAND:  One question we have is that the case

11  agent, who is the evidence custodian, will basically be helping

12  us get into the stuff that was found at the house that day.

13  She's also the case agent, and I don't know how the Court

14  applies the sequestration.

15       THE COURT:  I am of this view:  You should put her on

16  as soon as possible.

17       MR. GARLAND:  We will.

18       THE COURT:  If she is your designated representative,

19  I am likely to accept that.  But she cannot be a potted palm.

20  That is to say, I do not want you to say, "Now the Government

21  calls 'X'," and "X" does not hear that they have been called.

22  So, the case agent is going to have to go out and get them.

23  That is to say, if someone is going to be here we are going to

24  make them work.

25       MR. GARLAND:  In fact, we have two case agents who

1    will be here.  One is the person who will be testifying, and we

2    also have someone who can also be outside as well.

3          THE COURT:  Well, then, if you have got two you do not

4    need her.  Not to say that you have undercut your argument, but

5    one to a customer, and so everybody gets sequestered unless

6    they are the specific designated representative of the

7    Government, and if they are the specific designated

8    representative of the Government, they are to be actively

9    engaged during the course of the trial doing all of the things

10   that representatives of the Government should do.

11         MR. GARLAND:  And she will be.

12         THE COURT:  Unless you tell me there is some problem

13   with your relentless cross-examination of the Government's

14   designated representative, Mr. Sheketoff.

15         MR. SHEKETOFF:  I don't have any objection to that,

16   your Honor.

17         THE COURT:  All right.

18         I think you just put her on early.  One of the things

19   I am going to ask you to do is give me a list of witnesses and

20   also the people they are going to see in the courtroom as a

21   regular matter during the course of the trial, and I will

22   introduce her there.  If you tell me she is going to testify as

23   a representative of the Government, she may testify as well.

24         MS. BURKART:  Just one other note, your Honor, on

25   forfeiture.

1          THE COURT:  Right.  What do you want to do on

2     forfeiture?

3          MS. BURKART:  I think neither of us plans to retain

4     the jury for forfeiture.  I think that if we have a conviction,

5     we would do that in a bifurcated hearing, largely potentially

6     on the papers.  Also the AUSA who has been assisting us on the

7     forfeiture would be willing and able to do some type of a

8     hearing after a judgment, if that was necessary or appropriate.

9          THE COURT:  That seems realistic.  Of course I want to

10    hear Mr. Sheketoff, but my experience with juries and

11    forfeitures is that they are unhappily surprised that they have

12    been retained, and they return very prompt verdicts on

13    forfeiture.  Some of them do not make it out the door

14    before --

15         MS. BURKART:  I expect that would be right, your

16    Honor.

17         THE COURT:  So, any problem with that, Mr. Sheketoff?

18         MR. SHEKETOFF:  No.  I prefer that, your Honor.

19         THE COURT:  All right.  Anything else?

20         MR. GARLAND:  What is your preference for objections,

21    your Honor?  Do you prefer that --

22         THE COURT:  I hate them.

23                          (Laughter)

24         MR. GARLAND:  And we don't plan to do very many of

25    them.  But in case we do, do you prefer to hear the grounds

1   immediately?

2           THE COURT:  No.  If I want to hear the grounds I will

3   ask for it, and the grounds should be reference to a particular

4   rule of evidence and not speaking objections.  If I think that

5   I cannot understand why could anybody be objecting to this, I

6   might say, "Grounds?"  If it is apparent why, I will rule on

7   that basis.  To the degree that there is anything that needs

8   some further development outside of the presence of the jury, I

9   do not really like sidebars, I try to avoid them, so if we can,

10  I would just like to kind of take them up at breaks if there is

11  something like that.

12          MR. GARLAND:  Okay.

13          MS. BURKART:  Yes, your Honor.

14          THE COURT:  So, you all know how or at least will

15  become familiar with how to use the electronic equipment in the

16  courtroom.

17          MR. GARLAND:  Yes.

18          MS. BURKART:  Yes, we will, your Honor.

19          MR. SHEKETOFF:  I don't know how.

20          THE COURT:  Well, then, you are going to make an

21  appointment with Mr. Lovett or one of our IT people to learn

22  how to do it so it can be done efficiently and effectively.

23          MR. SHEKETOFF:  Right, I will do that.  I am not sure

24  I can learn this in a week, your Honor.

25          THE COURT:  Listen, if I can do it you can do it.  I

1   use that as the benchmark.  It is not a high hurdle to work

2   over.

3          MR. SHEKETOFF:  All right.  I will take you at your

4   word.

5          THE COURT:  Yes.

6          MR. SHEKETOFF:  I'm a slow learner, or I would not be

7   in this profession on this side.

8          THE COURT:  The world is full of them and they get

9   along, but it is not a lot of heavy lifting for this.  To the

10  degree you do not want to use them with a computer, the

11  document camera is pretty easy to manipulate.

12         All right.  So, I will see you next Monday.

13         Not to suggest otherwise, but this is really a trial,

14  Mr. Sheketoff?

15         MR. SHEKETOFF:  Yes.

16         THE COURT:  All right.  Just so that some other poor

17  devil does not get called at 3:00 on Friday afternoon and told

18  that they have a short weekend.

19         MR. SHEKETOFF:  I have pulled that stunt in the past,

20  but I don't see that happening.

21         THE COURT:  All right.  Thank you.

22         MR. SHEKETOFF:  Thank you, your Honor.

23         MR. GARLAND:  Thank you, your Honor.

24         MS. BURKART:  Thank you, your Honor.

25       (WHEREUPON, the proceedings adjourned at 3:00 p.m.)

```
1

2                        C E R T I F I C A T E

3

4

5            I, Brenda K. Hancock, RMR, CRR and Official Reporter

6    of the United States District Court, do hereby certify that the

7    foregoing transcript constitutes, to the best of my skill and

8    ability, a true and accurate transcription of my stenotype

9    notes taken in the matter of United States of America v.

10   Matthew Kuc, No. 1:11-cr-10014-DPW-1.

11

12

13

14

15

16   Date:    January 28, 2013        /s/ Brenda K. Hancock

17                                    Brenda K. Hancock, RMR, CRR

18                                    Official Court Reporter

19

20

21

22

23

24

25
```