**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,       . CRIMINAL NO. 11-cr-10014-DPW
    Plaintiff                 .
                              . BOSTON, MASSACHUSETTS
        v.                 . DECEMBER 17, 2010
                              .
MATTHEW J. KUC                  .
    Defendant                 .
. . . . . . . . . . . . . . .

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:   UNITED STATES ATTORNEY'S OFFICE
                By: Scott Garland, AUSA
                One Courthouse Way, Suite 9200
                Boston, MA 02210
                617-748-3148
                scott.garland@usdoj.gov

                UNITED STATES ATTORNEY'S OFFICE
                BY: Sarah E. Walters, AUSA
                One Courthouse Way, Suite 9200
                Boston, MA 02210
                617-748-3960
                sarah.walters@usdoj.gov

For the Defendant:    Robert Sheketoff, Esq.
                One McKinley Square
                Boston, MA 02109
                617-367-3449
                Sheketoffr@aol.com

Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

***Judy Bond Gonsalves***
**Certified Federal Court Transcriber**
**508.984.7003**

1  COURT CALLED INTO SESSION

2  (4:31:29 p.m.)

3          THE CLERK:  All rise.  United States District

4  Court for the District of Massachusetts is now in session.

5          THE COURT:  Please be seated.

6          THE CLERK:  The Honorable Leo T. Sorokin

7  presiding.  Today is December 17.  The case of United States

8  v. Kuc, Criminal Action 10-172, will now be heard before

9  this Court.

10          Counsel, please identify themselves for the

11  record.

12          MR. GARLAND:  Good afternoon, Your Honor.  Scott

13  Garland and Sarah Walters appearing on behalf of the United

14  States.

15          MS. WALTERS:  Good afternoon.

16          THE COURT:  Good afternoon.

17          MR. SHEKETOFF:  And good afternoon, Your Honor.

18  Robert Sheketoff for the defendant, Matthew Kuc, who is

19  seated next to me.

20          THE COURT:  All right.

21          MR. SHEKETOFF:  Standing next to me, actually.

22  He's now seated next to me.

23          THE COURT:  We're here for probable cause and

24  detention?

25          MR. GARLAND:  We are here for probable cause and

1  detention, Your Honor.

2          In talking with defense counsel, Mr. Sheketoff,

3  we've talked about conditions, and the Government thinks

4  that there are some conditions that could be -- that would

5  satisfy the Government's concern.

6          I don't think that we have agreement with the

7  conditions that the defendant has or necessarily with what

8  Pretrial is recommending either, but we thought that we

9  would talk about those with you --

10          THE COURT:  All right.

11          MR. GARLAND:  -- and put that before you.

12          THE COURT:  Do we have -- I don't actually have a

13  report from Pretrial.

14          Oh, okay.  Give me a minute to look at that then.

15          All right.  I've read the Pretrial Services report

16  and their proposal.  I'll hear you both.

17          Sir?

18          MR. GARLAND:  Thank you, Your Honor.

19          The Government would start out with wanting cash

20  from the defendant, but we think that $25,000 is a lot -- is

21  way to low.

22          THE COURT:  What are you thinking about?

23          MR. GARLAND:  Well, before I get to that, if I can

24  give Your Honor a little bit better picture --

25          THE COURT:  Okay.

1          MR. GARLAND:  -- of the cash -- the situation that

2  we understand.

3          The first thing is is that we look at the

4  statement of the assets here, and we wonder a little bit.

5  Because one of the things that we know is that the amount of

6  income that's been reported by Mr. Kuc over the last five

7  years has been way, way inaccurate.  And in particular, at

8  the time of the search one asset that was found there at the

9  house was around approximately $30,000 in cash.  That

10  doesn't appear on this financial affidavit here.

11          THE COURT:  Was that $30,000 seized?

12          MR. GARLAND:  No.  In fact, it was not at the

13  time, because at the time the agents weren't certain whether

14  it came within the warrant or not.  But it was there, and

15  it's not here on this.

16          But more importantly, just if you look at the

17  sheer number of assets that he has, $25,000 is -- pales in

18  comparison to his ready access to cash and to vehicles,

19  which any of them could be sold fairly quickly for a bit of

20  money.

21          So the amount of cash that we were wanting to

22  propose was $100,000 off the bat.

23          Then, as well, I believe that the Pretrial report

24  states that Mr. Kuc has no passport -- or that he has a

25  passport, but that it's expired at this point.  Of course,

1 we'd ask that the Court order him not to obtain any other

2 passport and also to turn that over to Pretrial, as well.

3          Maintaining residence at parents' houses is fine.

4 We're not going to be asking for electronic monitoring.

5          But we do think that a curfew that would be

6 verified in a manner -- and a fairly strict curfew that

7 could be verified would be something that the Court should

8 impose.

9          As well, because these vehicles -- all four of

10 them -- could not only be the means of traveling fairly

11 quickly to anywhere but also could be turned into money,

12 what we'd ask is not that the vehicles be taken away, but

13 that the titles and registration be put into the pretrial's

14 possession.

15          In particular, the one that we're most worried

16 about is the one that's worth -- it says here about $90,000

17 which is a quite nice Lamborghini.

18          The next thing that we'd be asking is that the

19 Court order that --

20          THE COURT:  If titles and registration are

21 deposited with the Pretrial, does that mean that the cars

22 can be driven or can't be driven?

23          MR. GARLAND:  Well, that would be another -- so

24 that would be a way of restraining the sale on the cars,

25 because the titles and registration would be there.

1          But when we would also ask the Court to order the

2  defendant not to be driving them about also, as well.

3          We would ask also that the Court order that --

4          THE COURT:  No driving at all or no driving --

5          MR. GARLAND:  No, no, no.  Driving is fine.

6  Driving is fine.  There are two other cars at the residence

7  that we know of.

8          THE COURT:  Other than -- So you're asking for all

9  four cars or just two or just the four he owns?

10         MR. GARLAND:  Just the four that he owns, Your

11 Honor.  Not the -- there's six -- our understanding is that

12 there are six vehicles there.  Four of which are in his name

13 registered and one in his mother's name and one in his

14 father's name, as well.

15         THE COURT:  I see.  Okay.  All right.  Go ahead.

16         MR. GARLAND:  We would ask that the Court order

17 him not to have any contact with the victims.  In part,

18 because that's how he was making the money -- the

19 allegations are in the complaint -- by contacting them and

20 trying to get the fraudulent parts.

21         We would ask that the Court order --

22         THE COURT:  Who are the victims again?  Which of

23 the corporations are the victims?

24         MR. GARLAND:  Those victims would be Dell

25 Computer, 3Com which I believe now is a division of

1 Hewlett-Packard, Lenovo, as well.

2          THE COURT:  Dell, 3Com and Lenovo?

3          MR. GARLAND:  And Hewlett-Packard, as well.

4          THE COURT:  Oh, and H.P.  Okay.

5          MR. GARLAND:  We would also ask that the Court

6 order that the defendant not work in the computer industry

7 or the computer repair industry, which is necessary because

8 that's what he was doing in this case.  The allegations are

9 that he worked for the computers, but he was also selling

10 them online, as well.

11          There's also an issue that we wanted to address

12 with the Court.  We're not exactly sure how to deal with

13 this.  But the day of the search as the agents were there at

14 the house looking at executing the warrant, the UPS man

15 pulls up, four more packages come in.

16          And so we have this concern about the fact that

17 there may still be packages coming -- coming there.  We

18 don't necessarily want those packages to be sent back to the

19 victims necessarily, because they could be continuing

20 evidence of the crime.  It doesn't make sense to give them

21 to Pretrial at all.

22          One thought that we had was that as the packages

23 come in, that they could go to somebody -- say at the FBI

24 who's not on the case at all kind of like attainting to be

25 basically held there, but that's something --

1          THE COURT:  Well, with respect to the warrant, at

2  least those things that came tomorrow putting aside the line

3  drawing of packages that arrive in the middle of the

4  execution of the warrant as whether they fall more like

5  things that were delivered five minutes before they showed

6  up and were in the house as opposed to the things that --

7          But as those things that showed up after they

8  closed up shop, finished executing the warrant and left,

9  what would be the basis to obtain those now, right now as it

10 stands absent another warrant?

11         MR. GARLAND:  That's exactly right.  You'd need to

12 have another warrant.

13         But they are still proceeds that are coming in.

14 Essentially fruits of the crime and can be converted into

15 more assets of the type that we're --

16         THE COURT:  Okay.  So one concern you have --

17         My view as to those things would be if you want

18 them as evidence, then you need to do what you need to do to

19 get them as evidence, --

20         MR. GARLAND:  Right.

21         THE COURT:  -- if your concern is that there are

22 things like that in the pipeline, so to speak.

23         MR. GARLAND:  That is -- that is our biggest

24 concern.

25         THE COURT:  And those are separate from whether or

1  not they're evidence, that they could be converted into cash

2  in the way that you allege that he was converting other

3  computer parts into money and that that cash poses a risk of

4  flight.  Then I guess the question is whether conditions

5  that could address that.

6          All right.  I understand that.  I'll think about

7  that.

8          MR. GARLAND:  Yeah.  That's exactly the

9  Government's concern.  It's not difficult to put those

10  things up on ebay.  It costs almost nothing to do it, and

11  they can be sold.  All you have to do is package it up and

12  boom.  It's gone.

13          THE COURT:  Uh-huh.

14          MR. GARLAND:  The money comes in through a PayPal

15  account which is accessible through ATMs or through other

16  means and can be accessed really anywhere in the world if

17  it's set up correctly.  That's the concern:  not the

18  evidentiary one but the cash issue.

19          THE COURT:  Right.

20          MR. GARLAND:  And then there are a variety of

21  other conditions of release that Pretrial has suggested in

22  there, and those other ones that are in there would be ones

23  that we would suggest to the Court, as well.

24          THE COURT:  All right.  Just remind me in the

25  complaint how much in the complaint you allege came through

1  -- came through this scheme.

2          MR. GARLAND:  I believe that in the complaint the

3  complaint alleges amounts that total to around three or four

4  hundred thousand dollars.

5          However, there's evidence that, in fact, what went

6  through the defendant's PayPal account is about $1.7 million

7  or maybe $1.4 million.

8          As well, the FBI has talked to I think it's Dell,

9  and they've asked for an estimate of just Dell's losses in

10  this, which go back, you know, a number of years.  And at

11  one -- at cost I think they allege that it would be about

12  $1.7 million.  But if you actually look at the value of the

13  equipment of what it could be sold for, it was more like 2,

14  $2.5 million.

15          So you're talking about high-dollar values.  And

16  that's only from Dell.  That's not from the others.  I think

17  other estimates we've gotten from 3Com and maybe it was H.P.

18  was like another 700,000 from them.

19          So he's going to have a significant guidelines

20  sentence.  I think we calculated somewhere in the area of

21  about five years.

22          THE COURT:  Uh-huh.  Okay.

23          All right.  Mr. Sheketoff?

24          MR. SHEKETOFF:  Five years?  Wow.  A client who's

25  only looking at five years?  Holy molely.

1          So I think all parties are agreed he's an

2    appropriate candidate for release, and I wish I had clients

3    like this all the time that I could say that about.

4          So the question is what are the circumstances of

5    this release.

6          The parents are willing to put up the house, but

7    to do that I don't know if --

8          THE COURT:  Hold on one second.

9    (Judge confers with the clerk.)

10         THE COURT:  This will only take one second.  I'm

11   sorry, Mr. Sheketoff.

12         Go ahead.  I'm sorry.

13         MR. SHEKETOFF:  The parents are willing to put up

14   the house.  I don't know --

15         THE COURT:  Say that again.  I couldn't hear you.

16         MR. SHEKETOFF:  The parents are willing to put up

17   the home.  I don't know if you want the full package where I

18   get a title search done and an appraiser to figure out what

19   the --

20         THE COURT:  Well, let me ask one question of the

21   Government.

22         Partly what you want is more than the $25,000 in

23   cash recommended by Pretrial Services.  Mr. Sheketoff says

24   the parents are willing to post the house which looks to

25   have about 300 roughly in equity given the home equity loan

1  and the rough valuation.

2          Assuming at a minimum that the tax assessment

3  comes back similar to that thereby suggesting, I think, that

4  that's at least in the ball park, what does that do in terms

5  of like the hundred thousand in cash?

6          MR. GARLAND:  I think that -- I mean, that helps

7  us, Your Honor.  But if you look at the amount of ready

8  access that he has --

9          THE COURT:  He's got a lot of cash.

10          MR. GARLAND:  He's got a lot of cash, a lot of

11  cars that could be sold fairly quickly, too, as well, and

12  that's about $344,000 there.  So it's nice that the house

13  was --

14          THE COURT:  So you're actually in this case more

15  interested in the cash than the house.

16          MR. GARLAND:  I believe so, Your Honor.  But the

17  house is -- there's no question that that's a significant

18  contribution to the package, as well.

19          For the cars part of the issue is that they can be

20  moved quickly and they can be sold easily, too.

21          THE COURT:  Okay.

22          Go ahead, Mr. Sheketoff.

23          MR. SHEKETOFF:  That suggests a desire to abscond

24  with leaving the parents' house up for sale to the

25  Government.

1          I mean, his father's had two strokes.  He's in the

2 courtroom.  His mother -- he still lives with his parents.

3 He has a very close relationship with his parents.  His

4 mother's in the courtroom also, Your Honor.  And the idea

5 that he would leave his parents in the lurch is just

6 impossible.  He has no prior record of any kind.  He's

7 honorably discharged from the U.S. Army.  He's not going

8 anywhere.

9          There's no minimum-mandatory sentence.  The

10 guidelines computed by the Government as favorably, I think,

11 as they can honestly say for themselves is in a relatively

12 low range compared to what most people face in federal

13 court.

14          I think if he puts up his parents' house, and he

15 agrees to all the other conditions --

16          THE COURT:  So you're saying -- you're proposing

17 what Pretrial proposes plus the house --

18          MR. SHEKETOFF:  And --

19          THE COURT:  Plus what with respect to -- plus what

20 --

21          This is the other conditions I have the Government

22 listed -- and if I missed one, Mr. Garland, tell me.

23 Surrender and not obtain a passport.

24          MR. SHEKETOFF:  Right.  We've looked for the

25 passport.  We can't find it.  The agents went through the

1  house in some significant --

2          Did the mother give it to you?

3          PRETRIAL SERVICES:  We have the passport.

4          MR. SHEKETOFF:  Oh, okay.

5          THE COURT:  All right.

6          MR. SHEKETOFF:  All right.  And so that's

7  perfectly acceptable.

8          Did she actually give it to you today, or you --

9          PRETRIAL SERVICES:  I did not take possession of

10 the passport.  It's waiting for --

11         THE COURT:  Okay.  But she has it.

12         MR. SHEKETOFF:  Okay.  She found it.  When I saw

13 her last night, she hadn't been able to locate it.

14         THE COURT:  All right.

15         MR. SHEKETOFF:  Because the house had been tossed

16 in the execution of the search warrant.  So, that's not a

17 problem.

18         He's not --

19         THE COURT:  What about the curfew?

20         MR. SHEKETOFF:  Realistically, he's not -- he's

21 not going anywhere.  I don't think there's a serious risk

22 that if he puts -- if his parents put up the house, he's

23 going anywhere.

24         THE COURT:  How do you feel about the other

25 conditions Pretrial and the Government propose?

1      MR. SHEKETOFF:  Well, I have no problem with any

2 of the conditions that Pretrial proposed.

3      THE COURT:  And how about -- putting aside the

4 money for the minute -- the other conditions the Government

5 proposes?

6      MR. SHEKETOFF:  That he --

7      THE COURT:  They proposed curfew.

8      MR. SHEKETOFF:  Right.  I mean, there is a

9 presumption of innocence even though --

10      THE COURT:  I'm not making a ruling.

11      MR. SHEKETOFF:  Right.

12      THE COURT:  I'm just asking.

13      MR. SHEKETOFF:  Okay.  What's the purpose of the

14 curfew really?  He's not going anywhere.

15      They basically say let him -- let's make sure he

16 doesn't work in the one industry he's worked in for ten

17 years, and that he --

18      You know, even if his employer decides I'm going

19 to keep him on -- even though he's been federally indicted

20 -- because he has to -- Pretrial has proposed that he inform

21 his employer which he will do -- then, you know, you take

22 away his ability to make a living.

23      If he were to continue to commit crimes while he's

24 on Pretrial release, that's a very serious problem for him.

25 I can't imagine that he would -- he's an intelligent young

1 man -- that he would be that foolish.

2          THE COURT:  So what do you think -- what's your

3 view of the no contact with the four victims?

4          MR. SHEKETOFF:  Oh, I have no problem with that.

5          THE COURT:  All right.  What about the not work in

6 computer repair?

7          MR. SHEKETOFF:  But that's --

8          THE COURT:  What does he do -- what did he do for

9 this company?  The Sensible Computers.

10          MR. SHEKETOFF:  He's an I.T. guy.  So, you know,

11 you're a small business.  Your computer is -- your network's

12 not working.  You call his company.  They send him to the

13 site to figure out what's wrong and to fix it.

14          It's not really what's at issue in the criminal

15 case.

16          THE COURT:  So it could be rebooting the computer.

17 It could be adjusting the settings.  It could be it's a

18 defective hard drive, order a new hard drive, pull out the

19 old hard drive, swap it out.

20          MR. SHEKETOFF:  Right.

21          THE COURT:  It could be any one of innumerable

22 things related to that.

23          MR. SHEKETOFF:  Correct.

24          THE COURT:  Okay.

25          MR. GARLAND:  Your Honor, may I be heard on that

1  small point for a second?

2          THE COURT:  In a minute.  I'll come back to you.

3          All right.

4          MR. SHEKETOFF:  There are no personal computers in

5  his residence, because the Government took them all, and we

6  won't replace them.

7          THE COURT:  What about the cars?

8          MR. SHEKETOFF:  I think you can tell us not to

9  sell the cars without the Court's permission, and we'll

10 accept that as a condition.

11         He may want to raise funds for counsel at some

12 point, and that might be the way to do it.

13         But that he can't drive the cars?  I mean, if you

14 were going to leave town, would you leave town in a

15 Lamborghini, or would you rent a car and disappear?  He

16 can't drive?

17         I mean, we will agree not to sell the cars without

18 the Court's permission.

19         And the Lamborghini, I think there's a huge amount

20 owed on that car.  So even if he sold it, he's not going to

21 get $90,000.

22         THE COURT:  All right.  And what about the

23 packages coming in from the perspective of --

24         MR. SHEKETOFF:  Well, I don't think we should be

25 in the business of turning over evidence to the Government

1 that they want to use against us.  I think they can ask --

2 you know, they --

3        They've identified their alleged victims, and they

4 know the set of addresses that these things get delivered to

5 --

6        Am I wrong?

7        UNIDENTIFIED MAN:  There are lot of them.

8        THE COURT:  I think they think you're -- I think

9 they think there might be other victims is their

10 supposition.

11        MR. SHEKETOFF:  Okay.

12        THE COURT:  But I don't know.

13        The question I have is this.  I'm not -- let me so

14 we're clear.  I'm not ordering the defendant to produce

15 evidence to the FBI of the crimes that he's alleged to have

16 committed.  It seems to me if there's evidence the

17 Government wants, the Government has to get that evidence in

18 the ordinary course the way it gets all -- whatever regular

19 way it gets evidence.

20        So what I'm just asking about is that part of what

21 the Government said was, look, we have reason to believe

22 that more packages that they allege are of the same vein are

23 coming in, and those essentially are a form of something

24 that could be converted to cash.  And they say four came

25 that day, for example, and so they presume that at least for

1  a period of time be it a couple of days or several weeks

2  there'll be more of those.  How many they are, how much --

3  whether they're really significant in the scheme of amount

4  of money, I don't make any findings.

5          I'm simply asking is there anything either I

6  should do about that; and if I should, what should I do?

7          MR. SHEKETOFF:  Well, what I would propose, Your

8  Honor, is to order him not to sell or turn into cash in any

9  way any computer parts that arrive at his home for the next

10  90 days or 120 days or whatever you want to say.  Then if

11  they want to execute another search warrant, I'm not sure

12  you can order him to keep them on the premises so that -- or

13  maybe you can.

14          We'll agree he won't sell anything or any computer

15  parts that arrive by UPS or any other form of ground or air

16  transportation.

17          THE COURT:  All right.  What if I did this?

18          I'll come back to the computer repair.

19          It seems to me that with respect to the cars, it

20  suffices if I say that if I order that the four --

21          What are the four cars?  One's a Lamborghini.

22  What are the other three?

23          MR. SHEKETOFF:  Two are Mercedes and one is a

24  Porsche.

25          THE COURT:  What if I said this?  What I'm

1  inclined to do is order that, (A), that he can't sell any of

2  the four cars without prior Court approval, and that he

3  deposit the titles to the four cars to Pretrial.  Without

4  the title he can't sell it as a practical matter in any

5  event, and the --

6          I don't see how there's --

7          I don't really see how there's more risk of flight

8  if he's driving a car registered in his name than if there's

9  a car driving in somebody else's name.  I'm not prohibiting

10 him from driving.  I don't see any reason to prohibit him

11 from driving or confine him to the home.  I don't see why

12 he's a greater risk of flight if he can drive a Lamborghini

13 or drive a Mercedes or drive a BMW or drive his parents' car

14 or drive his friend's car.  It is what it is.  If the issue

15 is --

16         I think those two conditions:  can't sell the cars

17 without prior Court arrival, and he deposits the titles by

18 -- what's today?  Friday?  I was going to say the close of

19 business Tuesday simply because depending on what happens

20 with the weather Monday, it might be difficult to get up

21 here.  Yes?

22         PRETRIAL SERVICES:  With respect to the titles,

23 I've been advised by Chief Riley that we -- it would not be

24 appropriate for us to take possession of the titles, but

25 that potentially maybe if they were deposited with the

1  Government.

2          THE COURT:  Why can't you guys take them?  You

3  only take passports.

4          PRETRIAL SERVICES:  Passports and Green Cards

5  apparently, yeah.

6          THE COURT:  It seems to me you could file them

7  with the Court.  I'm just thinking about --

8          MR. SHEKETOFF:  What if I take possession of the

9  titles, Your Honor, as an officer of the Court.

10          THE COURT:  I'm comfortable with that.  You take

11  possession of the titles.

12          MR. SHEKETOFF:  Yes.

13          THE COURT:  So you file something --

14          MR. SHEKETOFF:  And I'll file the notice that I

15  have them.

16          THE COURT:  A notice by close of business Tuesday

17  that you have all four titles, and that you take possession

18  of them, and you can keep them in your escrow account or

19  whatever other means you have to secure them.

20          MR. SHEKETOFF:  Okay.

21          THE COURT:  All right.  With respect to -- I'll

22  add, if you didn't already add, Maria, the no contact with

23  the four -- with the victims including the four named ones.

24          THE CLERK:  Do I need to name them?

25          THE COURT:  Sure.  Dell, 3Com, 3-C-O-M, H.P.

1          THE CLERK:  Besides Dell, what was the second one?

2          THE COURT:  3Com, 3-C-O-M, H.P., Lenovo,

3 L-E-N-O-V-O.

4          THE CLERK:  I'm sorry.  What was that one?

5          THE COURT:  L-E-N-O-V-O and H.P.

6          THE CLERK:  So Dell, 3Com, H.P. and Lenovo?

7          THE COURT:  Correct.

8          I'm inclined to say that --

9          The concern I have, Mr. Sheketoff, with his work

10 in computer repair is this.  That the offense alleged in the

11 complaint is that he's essentially not returning to

12 companies potential parts but getting the replacement part,

13 as I understand it.  Calling up Dell.  I've got a defective

14 monitor, send me the replacement monitor under warranty, and

15 I'll send you back the original.  And then taking the

16 original -- the new one and selling it and never returning

17 the old one.

18          But the numbers -- serial numbers and the like are

19 real ones, because they match up in Dell's system to real

20 numbers.  What the source of those numbers are is not

21 revealed to me in the criminal complaint.  A possible source

22 would be working in repairing computers where one might come

23 across all sorts of serial numbers.

24          What I'm inclined to do is that if he wants to

25 work in the computer repair business, he needs prior Court

1  approval, and we'll see what it is.  If --

2          Other than his present employment.  If his present

3  employment is informed of the --

4          Will you object to him working at his present job

5  if they after notice say okay?

6          MR. GARLAND:  Your Honor, that's right.  And the

7  reason is that as Mr. Sheketoff was saying, that it has no

8  connection to this offense.  But the complaint affidavit

9  alleges that he was receiving some of these parts at

10  Sensible Computer.  That was one of the places where he

11  received multiple shipments of the fraudulently obtained

12  parts.  That makes it --

13          THE COURT:  How big is Sensible Computer?  Does

14  anybody know?

15          MR. GARLAND:  I believe it's only a few people.

16  May I check with the agent?  He's --

17          THE COURT:  Yeah.

18          MR. GARLAND:  Three people, Your Honor.

19          THE COURT:  Why don't we -- what's the likelihood

20  --

21          Do you have any idea, Mr. Sheketoff, whether as a

22  practical matter they will let him continue to work there?

23          MR. SHEKETOFF:  We're not sure.

24          THE COURT:  Okay.

25          MR. SHEKETOFF:  I don't know, because I don't know

1 the Government's case very well, and I've waived the

2 probable cause hearing, and I'm going to waive the thirty

3 day requirement on the indictment.  I've already told the

4 Government that.

5           I don't know that it's really their allegation

6 that he used his job to obtain these serial numbers.  I

7 think I'm hearing them saying that he used his job as a

8 place where stuff could be sent to as opposed to he used it

9 to exploit, you know, the obtaining of serial numbers.

10          THE COURT:  This is what I'm going to do on the

11 job, because I don't want to unduly delay with respect to

12 this issue the establishment of conditions.

13          I'm going to say he has to give the notice within

14 twenty-four hours to his present employer, and then he needs

15 to notify the Court either that -- if he's -- either he's

16 going to continue there -- what his employment status is.

17 He's going to continue -- he wishes to continue there, or he

18 doesn't, or he's not going to continue there for whatever --

19 either for his own reasons or for their reasons.  If he --

20          This is the way to phrase the condition.  He needs

21 approval to work in the computer business from the Court,

22 and I'll address it.

23          But I'm not addressing his present job right now.

24 Let him give notice to his present job, and we'll see where

25 it is.  And he can --

1          If they say he can go back, he'll notify the Court

2 on Monday or no later than Tuesday, because he'll have

3 notified them on Monday.  Notify me on Tuesday if they say

4 he can go back.  And with a little description at that point

5 of what it is that they would be having him do.  And then

6 I'll look at the issue.

7          If they say no, then he's to look for employment,

8 and when he -- if he's not in the computer business, so be

9 it.  If it's in the computer business, then bring it to

10 Pretrial Services, and we'll see where we are.

11          I'll add the condition that he shall not sell

12 computer equipment.  Simply he shouldn't sell any computer

13 equipment in the next 120 days or any computer equipment he

14 receives within the next 120 days.  So that he --

15          During the next 120 days there's no sales, and

16 anything that he receives within the next 120 days he

17 doesn't sell absent Court approval.

18          So if he gets a UPS package tomorrow, he can't

19 sell that in 121 days from today unless it's Court approval,

20 and he can't make any sales of computer equipment in the

21 next 120 days.

22          Okay.  In terms of the cash issue --

23          Let me just look at this.

24          All right.  I'll do -- I think the house is very

25 significant in my mind.

1          I see the Government's concern about the cash,

2 especially given the 30,000 that was in the house that

3 doesn't appear to be listed.

4          I'll -- I think what I'll do is say a 50,000 in

5 cash, post the house.  I think that's enough.

6          I think -- I don't think I need to take every

7 asset that the defendant has in order to ensure he doesn't

8 flee.  He's lived there his whole life.  He's a United

9 States citizen.  Not only a United States citizen, but he's

10 been essentially here almost his whole life.  He lives with

11 his parents.  He's been here.  He served in the United

12 States Army.  He was honorably discharged.  He doesn't have

13 a prior criminal record.

14          I think that it's -- not many people, but there

15 are people who come into the courthouse and most of them

16 walk out who have the means to flee if they wish to in the

17 sense that they have the financial ability to finance it,

18 and I think that -- here I think he appreciates the

19 seriousness of the case.  He's -- his parents are posting

20 their house.  That has a value separate and apart from the

21 financial value of the home -- separate and part from its

22 cash worth and it's significant.  So I think in those

23 circumstances that suffices.

24          Anything else with respect to the conditions?

25          MR. GARLAND:  No.  I think the only thing that's

1 gone unaddressed is -- I can't remember whether the Court

2 decided about a curfew or not.

3          THE COURT:  Oh, right.  I did not address that.

4          Why do we need a curfew I guess is the question?

5 Or what purpose would is serve here?

6          The reason I ask is this.  This doesn't strike me

7 as the kind of behavior that's alleged that even if it's --

8          Well, putting aside exactly what questions I'm

9 supposed to consider on a risk of flight detention hearing,

10 but putting that aside for the moment, this isn't the kind

11 of conduct that there's a greater risk of at night than

12 during the day.  There's nothing in the Pretrial Services

13 report or in the criminal complaint that suggests that other

14 than the conduct alleged -- alleged criminal conduct that

15 his life is out of control in any way, and that therefore

16 sort of the stability that would come from a curfew would be

17 necessary.

18          There's a risk of flight for the reasons you

19 articulated, but there's a variety of conditions, and he

20 reports to Pretrial Services.

21          I mean, is there something else that suggests he's

22 such a risk of flight that we need to know every single day

23 seven days a week that he's at home, or that he's living

24 there?

25          MR. GARLAND:  The Government, of course, concedes

1 that this isn't a picture of somebody whose life is out of

2 control.

3          I would address one point that the Court raised.

4          THE COURT:  Yeah.

5          MR. GARLAND:  Which is whether it's more likely

6 that the crime could be committed in the night rather than

7 during the day.  I think the answer is is that if he's

8 spending his time at his house, and there are no computers

9 there which is the method by which he would contact the

10 victims and other people, then if he's at the house, there's

11 not a real way to commit that crime.  Because it was done by

12 computer, and not by telephone.

13          If he's out, there are computers everywhere.  You

14 can go to the library.  You can go to an Internet cafe.  You

15 can go to a friend's place.  A lot of different places.

16          And in fact, doing it from another address,

17 frankly, is a better idea.  I mean, that's a better way to

18 get away with the crime, because it makes it more difficult

19 to trace it back to him.

20          So I believe on that one ground that I want to

21 address that.  That it is a little bit easier this if he's

22 not there.  The parents are there, and they're a stabilizing

23 influence in his life, and he's less likely to do it at the

24 house.  Then he should be at the house.

25          MR. SHEKETOFF:  But he only needs a few minutes to

1 do it, Your Honor; and he can do it at the library during

2 the day.

3          THE COURT:  I think given the -- I think it

4 doesn't do enough to the extent --

5          I mean, I see the point it clearly to some degree

6 addresses that risk.  I think though you can't move on

7 danger, I think I can address danger on the conditions of

8 release.

9          But I think the condition that he not have -- that

10 he not sell computer parts, that he not access the Internet

11 at all except for legitimate work purposes.

12          Which I understand to mean, Mr. Kuc, related to

13 whatever employment you have as opposed to businesses that

14 you choose to run.

15          I think that --

16          Is it possible to evade it?  Sure.  Every

17 condition can be evaded just about.

18          But I think it suffices.

19          All right.  Anything else?

20          MR. SHEKETOFF:  No, Your Honor.  There's just a

21 question of timing on this.

22          THE COURT:  So what's the status of the cash?

23          MR. SHEKETOFF:  Well, if he's released, he can go

24 to the bank and access his checking accounts and come back

25 with cash.

1          And I don't know what you want me to do with the

2 house.  Do you just want a mortgage, or do you want me to go

3 through the whole package where I have a title examination

4 done, I have a certification from a lawyer saying that he's

5 checked and they own the house free of encumbrances except

6 for the line of credit.  You know --

7          THE COURT:  What's the Government's view?

8          MR. GARLAND:  Your Honor, I think we're a little

9 bit ahead of the game on that having ordered a title search,

10 so that should actually be in process as we speak.  And we

11 may have it by Monday, so.

12          THE COURT:  Well, I guess what's your view of the

13 timing?  Is your view I should release him now to come back

14 Monday with the money?  That I should hold him until Monday,

15 release him Monday morning and make him get the money the

16 Monday and come back with the money on Monday?  That he

17 should have to do the house --

18          I mean, we do is all different ways depending on

19 the case, so.

20          MR. GARLAND:  Can I take a second to confer with

21 counsel?

22          THE COURT:  Yeah.  Sure.

23          MR. GARLAND:  I think the Government's position

24 that he can be released to comply with the conditions on

25 Monday.

1          THE COURT:  All right.  So then I'll do this.

2 I'll establish the conditions.  He should post the $50,000

3 by -- he can do by close of business -- he can do it by

4 close of business Monday.

5          MR. SHEKETOFF:  The only problem is, Your Honor,

6 if we really get the nor'easter on Sunday night, there may

7 be no one doing anything on Monday.  It may be physically

8 impossible to travel.  I would prefer Tuesday.

9          THE COURT:  All right.

10          MR. SHEKETOFF:  Of course, if it fizzles, we'll do

11 it on Monday.  But if it -- if we actually have a major

12 snowstorm --

13          THE COURT:  I'll say -- Do this.  I will say done

14 by close of business Tuesday but all reasonable efforts to

15 do it on Monday.

16          MR. SHEKETOFF:  Yes, Your Honor.

17          THE COURT:  The house -- I think I'll have the

18 parents today sign the bond.

19          MR. SHEKETOFF:  Okay.

20          THE COURT:  And the bond will say secured by the

21 home.  And then --

22          MR. SHEKETOFF:  Do you want me to prepare a

23 mortgage as I normally would in these cases?

24          THE COURT:  And do the normal package stuff.  The

25 Government -- if they've already done the title search,

1   there's no reason to do another title search.

2           MR. SHEKETOFF:  Okay.

3           THE COURT:  And then how much time to finish with

4   that?

5           MR. SHEKETOFF:  Well, I would actually hire a

6   lawyer on Monday to -- even though the title search is -- if

7   the Government says the title search is done, that's one

8   thing he doesn't have to do.  But he has to hire an

9   appraiser to go out and look at the property.  He has to

10  check with the --

11          THE COURT:  I'll tell you this with respect to the

12  appraiser, unless counsel for the Government is of a

13  different view, given that the agents have been there and

14  seen the house, so they had some sense of -- that it's in --

15  I'm assuming it's in reasonable condition, it's habitable

16  and the like without any obvious, you know -- there's not

17  holes in the roof or what-have-you -- that I'm prepared to

18  -- given that there's no mortgage on the property, just the

19  home equity line we believe, I'm prepared in the first

20  instance to just take the tax assessment records from the

21  Town of Attleboro's to a rough valuation.  It will be

22  faster.

23          MR. SHEKETOFF:  Okay.

24          THE COURT:  I don't see that the appraisal adds a

25  whole lot in this case.

1      MR. SHEKETOFF:  All right.  Then I think the other

2 things in the package are the mortgage, the deed which are

3 easy to prepare in a day, and I think there's an escrow

4 agreement of some sort too that has to be signed.

5      So again, if I could have 'til Tuesday.

6      THE COURT:  Oh, yeah.

7      MR. SHEKETOFF:  Because if we get snowed in on

8 Monday, that means the parents --

9      THE COURT:  Why don't I say 'til Tuesday for the

10 paperwork for that, as well.

11      You don't need the appraisal.  You can just use

12 the --

13      Unless the title comes back with a significant

14 mortgage or something different, and then we can talk about

15 it.

16      And if as a result of the -- if you don't have the

17 title search back in time, then on Monday or Tuesday file

18 something of how long you think you need, and I'll set that

19 date.

20      MR. SHEKETOFF:  Okay.

21      THE COURT:  All right.  Anything else?

22      MR. SHEKETOFF:  No.  I'm going to turn over --

23      THE COURT:  Did he already waive -- he didn't

24 waive probable cause, but that's --

25      MR. SHEKETOFF:  We're waiving it.

1            THE COURT:  All right.

2            MR. SHEKETOFF:  I'm going to turn over the

3  passport in open court --

4            THE COURT:  Fine.  Thank you.

5            MR. SHEKETOFF:  -- to Pretrial.

6            THE COURT:  So Mr. Kuc, you're entitled to a

7  hearing on probable cause.  That's whether there's some

8  evidence to support the charge against you.

9            Mr. Sheketoff says you wish to waive that hearing.

10 If you waive it, it's done and over.  There is no hearing.

11 I'll make the decision based on the evidence -- the paper

12 evidence before me.

13           Is that what you wish to do?

14           THE DEFENDANT:  Yes.

15           THE COURT:  All right.  Fine.

16           I find a knowing and voluntarily waiver of the

17 right to hearing on probable cause, and I find the complaint

18 is supported by probable cause based on the evidence before

19 me.

20           I'm going to release you, Mr. Kuc, on the

21 conditions that we've been discussing here.  I'm just going

22 to -- just so we're clear, since we've been back and forth

23 on some of the conditions, let me explain to you orally what

24 those conditions are, and in a minute or two you'll get them

25 in writing to sign.

1          Have you finished, Maria?  Why don't you print it

2 out and give it to me, and I'll --

3          THE CLERK:  I was going to go over it.

4          THE COURT:  That's all right.  I'll go over it as

5 I read them.

6          One -- actually, one matter.  Mr. Kuc, are your

7 parents --

8          These are your parents?  Are you Mr. and Mrs. Kuc?

9          THE FATHER:  Yes.

10          THE COURT:  All right.  So let me just ask you one

11 question; and that is, what's been proposed by your son's

12 lawyer --

13          I'm assuming he's already talked to you about this

14 knowing Mr. Sheketoff, but I want to ask you anyway.

15          What's being proposed is that you're going to post

16 your house as one of the things that secure your son's

17 appearance in court whenever his presence is required.

18          So what that means is that there are going to be

19 various documents that as the owners of the home you'll need

20 to sign.  Such as a mortgage in favor of the Government and

21 a deed to in favor of the clerk's office of the United

22 States District Court.

23          Now, none of that is going to be -- you get to

24 continue to live in your home.  You have your home equity

25 line of credit.  All that remains.

1            But what it does --

2            And as long as your son appears in court whether

3 he's convicted or acquitted, you live in the home.  The home

4 is yours.  All right?

5            But if he fails to appear, then you owe the house

6 to the Government.  All right?  And the Government will come

7 after the house to take it.

8            So it's really -- it's really a -- that's what it

9 is.  It's a guarantee that he'll show up.  As long as you

10 make him show up or as long as he shows up all on his own,

11 you don't have anything to worry about.  But if he doesn't,

12 then you do, and then you lose the house.

13            Do you understand that?

14            THE FATHER:  Yes.

15            THE MOTHER:  Yes.

16            THE COURT:  All right.  And you're prepared to do

17 that?

18            THE FATHER:  Yes.

19            THE MOTHER:  Yes.

20            THE COURT:  All right.

21            So Mr. Kuc, these are the conditions I'm going to

22 release you on.  They are:

23            That you appear whenever your presence is

24 required;

25            That you execute a bond in the amount of $100,000

1  secured by $50,000 in cash to be posted by the close of

2  business Tuesday, December 21;

3          That you report to Pretrial Services whenever they

4  direct, that means in person if they say in person, by phone

5  if they say by phone, once a week, once a month, once a day,

6  whatever they say;

7          In addition, your parents will post the house in

8  which they live as security for your appearance, and the

9  property -- the relevant property documents will be filed

10 with the Court by the close of business Tuesday, December 21

11 unless, as we discussed, Mr. Sheketoff, there's an issue

12 with the title search or something, and then just tell me

13 how much time you and the Government think you need;

14         That you surrender your passport to Pretrial

15 Services;

16         You obtain --

17         You've done that.

18         Obtain no passport;

19         Your travel's restricted to the District of

20 Massachusetts.  If you need reason to leave, including going

21 to Rhode Island, you need Court permission;

22         You maintain your current residence at your

23 current address in North Attleboro and not move without

24 prior approval of the Court;

25         You have no contact with the victims directly or

1  indirectly, that includes Dell, 3Com, H.P. and Lenovo;

2          No firearm, destructive device or dangerous

3  weapons in the home or in your possession;

4          Refrain from excessive use of alcohol;

5          Refrain from use or unlawful possession of

6  narcotic drugs;

7          Drug testing by Pretrial Services;

8          You may not use a computer or access the Internet

9  on any device including a smart phone except for legitimate

10 employment purposes;

11         All personal computers currently in the residence

12 shall be removed within 48 hours and not replaced;

13         You shall inform your current employer of the

14 pending federal charges.

15         I think I should change that to the close of

16 business Tuesday, should I not, rather than twenty-four

17 hours?

18         PRETRIAL SERVICES:  That's correct.

19         THE COURT:  Within the next 120 days you're not to

20 sell or turn into cash in any way any computer parts.

21         Let me write this out.  Hold on.

22         Okay.  Within the next 120 days --

23         This part is going to change, Maria.

24         -- the defendant is not to sell or turn into cash

25 in any way any computer parts; at no time shall defendant

1 sell any computer parts that may arrive at the residence

2 within the next 120 days.

3          Defendant is not to sell the vehicles without

4 prior Court approval and deposit the titles of the four

5 vehicles with Attorney Sheketoff by 12/21/2010.

6          And the -- the employment condition, Maria, E,

7 should just say employment in the computer repair business

8 requires Court approval.

9          I think that covers everything.

10          MR. GARLAND:  I believe it does, Your Honor.

11          THE COURT:  All right.  So Mr. Kuc, those are the

12 conditions upon which I'm going to release you.

13          There is one other -- there's also certain

14 conditions that apply as a matter of law for every person on

15 release.  They're printed on the front and back of the bail

16 papers, and you should review them with Mr. Sheketoff when

17 you sign the papers.  I'll briefly summarize them for you.

18          If you violate any of these conditions of release,

19 that can result in the immediate issuance of a warrant for

20 your arrest, revocation of release and order of detention.

21          If you commit a crime while on Pretrial release,

22 if you -- that's a either separate crime or increases the

23 punishment you face if convicted on this offense.

24          It's also a federal crime to intimidate or attempt

25 to intimidate a witness, victim, juror, informant or officer

1  of the Court or obstruct the investigation or tamper with

2  any of the same.

3          It's also a federal offense to knowingly fail to

4  appear as required or to surrender for service of a sentence

5  should one be imposed in this case.

6          All of those federal crimes are punishable by five

7  or ten years in prison, quarter of a million dollar fine

8  both or more depending on the circumstances.

9          The other condition imposed, as a matter of law,

10 is that you have to notify Pretrial Services within 24 hours

11 of any contact with law enforcement.  So having contact is

12 not a violation, but not telling them about it is a

13 violation.  So if you have contact, tell them.  If you don't

14 know whether it qualifies, tell Mr. Sheketoff and ask him

15 what he thinks.

16         All right?

17         Anything else we need to do today other than Mr.

18 Kuc has to sign the bail papers and be brought downstairs

19 for processing and release?

20         MR. GARLAND:  Nothing for the Government, Your

21 Honor.

22         THE COURT:  All right.  No?

23         MR. SHEKETOFF:  No, Your Honor.

24         THE COURT:  All right.  Then we're adjourned.  He

25 can sign the bail papers and then be brought downstairs for

1 | release.

2 |          THE CLERK:  All rise.  This matter is adjourned.

3 |      (Court adjourned at 5:23:26 p.m.)

4 |

5 |

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

42

1                          CERTIFICATION

2          I, Judy Bond Gonsalves, a court approved transcriber,

3     certify that the foregoing is a correct transcript from the

4     official electronic sound recording of the proceedings in

5     the above-entitled matter.

6

7

8     _____   March 2, 2013
      Judy Bond Gonsalves

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        *Judy Bond Gonsalves*
                **Certified Federal Court Transcriber**
                        **508.984.7003**