# United States Court of Appeals
## For the First Circuit

No. 12-2496

UNITED STATES OF AMERICA,

Appellee,

v.

MATTHEW J. KUC,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Dana A. Curhan, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

December 10, 2013

**TORRUELLA, Circuit Judge.** Defendant-Appellant Matthew J. Kuc ("Kuc") was indicted for fraudulently obtaining computer parts and selling them for profit. After a four-day jury trial, Kuc was convicted of four counts of wire fraud, one count of possession of stolen property, and one count of aggravated identity theft. On appeal, Kuc presents two claims: 1) the search warrant was defective because it violated the Fourth Amendment's particularity requirement, and 2) the evidence was insufficient to convict Kuc of aggravated identity theft. Neither claim has merit, and for the reasons that follow, we affirm.

## I. Background

Because Kuc challenges the sufficiency of the evidence against him, "we rehearse the facts in the light most favorable to the jury verdict, consistent with record support." United States v. Valerio, 676 F.3d 237, 240-41 (1st Cir. 2012) (citations omitted).

### A. Kuc's Fraudulent Scheme

From June 1, 2005 until December 14, 2010, Kuc engaged in a fraudulent scheme to obtain computer parts from several computer companies, including Dell, 3Com, Hewlett-Packard, and Lenovo. He would begin by contacting a computer company via telephone or online chat session, claiming that he needed a replacement part for a defective computer component that was under warranty. As proof, Kuc would provide the company with a serial number or service tag

that belonged to a real piece of computer equipment under warranty. The company would then mail Kuc a free replacement part with the expectation that he would return the defective part upon receipt, but in most instances, Kuc failed to do so. This is because Kuc neither owned nor had the right to service the components that he falsely claimed were defective. Instead, he manipulated the companies' warranty procedures to receive free "replacement" computer parts, including tape drives, motherboards, hard drives, and processors, which he subsequently sold online for profit.

To prevent the companies from detecting his fraudulent activities, Kuc used multiple shipping addresses when requesting replacement parts. In addition, Kuc utilized a variety of alternate spellings of each address, such as "3-6 Laurelwood Drive" and "36 Louralwood Drive." Each version was sufficiently different to slip through the companies' internal fraud-detection system but sufficiently similar to a real address that deliveries would still arrive at their intended destination. Kuc also used hundreds of aliases, such as "Tadeusz Tadeusz," "Ray Di Ciaccio," and "Sue Parchesco," to request the warranty replacement parts. Additionally, he used alternate spellings of his own and other names, such as "Matt Kook," "Matt Kuk," and "Matt Cook."

One of the names that Kuc used on numerous occasions was Francisco Samuel ("Samuel"). Samuel, a business associate of Kuc, gave Kuc permission to deliver packages to Samuel's business at 42

Union Street in Attleboro, Massachusetts because Kuc told Samuel that no one was present to accept morning deliveries at Kuc's place of employment. Samuel and Kuc did not discuss the use of Samuel's name on the packages, and Samuel did not know about Kuc's fraudulent scheme. Nevertheless, Kuc used Samuel's name and variations of Samuel's name, together with variations of the name of Samuel's company, to receive computer parts at 42 Union Street and other addresses.

Once Kuc received the "replacement" computer equipment, he sold the parts online through a business he called Total Asset Recovery. In total, Kuc received in excess of $3,576,000 worth of replacement parts from computer companies, and he made a total of $1,322,066 from online sales.[1]

### B. The Search of Kuc's Residence

The North Attleboro Police Department initially learned of Kuc's scheme in 2009 from investigators who were working for one of the defrauded computer companies. In 2010, Special Agent Kenneth Heitkamp of the Federal Bureau of Investigation, working in concert with the North Attleboro police, discovered that Kuc was selling parts from other computer manufacturers as well. On December 10, 2010, Agent Heitkamp applied for and received a

---

[1] The record is not clear as to what percentage, if any, of Kuc's business at Total Asset Recovery was based on non-fraudulent acquisitions and sales.

warrant to search Kuc's residence. The search warrant specified the location to be searched and authorized the seizure of:

> All records, in whatever form, and tangible objects that constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1343 (wire fraud), 2314 (interstate transportation of stolen property), 2315 (storage and sale of stolen property in interstate commerce), and 2 (aiding and abetting), including, without limitation: [list of twenty-three categories of items].

On December 14, 2010, agents searched Kuc's residence and seized over 170 boxes of computer parts with markings from Dell, 3COM, Lenovo, and Hewlett-Packard. Agents also seized a notebook and computer files containing lists of different names, companies, and addresses that Kuc had used to receive computer parts. A forensic examiner later discovered computer files with scripted chat conversations that Kuc had used to request replacement parts.

On March 1, 2012, Kuc filed a motion to suppress the fruits of the search warrant, arguing that it violated the particularity requirement of the Fourth Amendment. On June 14, 2012, the district court denied the motion, and the evidence taken from Kuc's residence was admitted at trial. Ultimately, the jury convicted Kuc of four counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of receipt, possession, and storage of stolen property in interstate commerce, in violation of 18 U.S.C. § 2315; and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A.

## II. Analysis

Kuc makes two claims of error on appeal. First, he argues that the district court erred in denying his motion to suppress the fruits of an invalid search warrant. Second, he claims that the court erred in denying his motion for judgment of acquittal on the aggravated identity theft charge. We take each claim in turn.

### A. The Motion to Suppress

When reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and legal conclusions de novo. United States v. Crooker, 688 F.3d 1, 6 (1st Cir. 2012). If "any reasonable view of the evidence supports the decision," we must affirm. United States v. Tiem Trinh, 665 F.3d 1, 9 (1st Cir. 2011) (quoting United States v. Woodbury, 511 F.3d 93, 97 (1st Cir. 2007)).

Kuc argues that the search warrant violated the particularity requirement of the Fourth Amendment because it contained broad language and provided effectively no limitations on the scope of the search. To support this claim, he relies on the first paragraph of the warrant's text, which authorizes the seizure of "[a]ll records . . . and tangible objects that constitute evidence, fruits, and instrumentalities of violations of [specified criminal statutes] including, without limitation," certain

enumerated categories of items.[2]  The language "including, without limitation," is -- according to Kuc -- evidence that this was a general warrant contravening the Fourth Amendment's requirement that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The references to certain criminal statutes cannot save the warrant, Kuc adds, because a general warrant limited only by reference to a broad criminal statute has "no limitation at all." See United States v. Roche, 614 F.2d 6, 8 (1st Cir. 1980) (finding that search warrant violated particularity requirement where its only limitation was a reference to the mail fraud statute).

Kuc is certainly correct insofar as he argues that general warrants "authoriz[ing] the wholesale rummaging through a person's property" are invalid.  United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999).  The particularity requirement demands that a valid warrant: (1) must supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized.  Id.; see also United States v. Abrams, 615 F.2d 541, 545-46 (1st Cir. 1980).

---

[2]  We note that Kuc has elected not to argue on appeal that any of the twenty-three categories of items violated the particularity requirement, and thus such argument is deemed waived.  See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 374 n.7 (1st Cir. 2011).

Despite Kuc's assertions to the contrary, however, the warrant in this case did not run afoul of the particularity requirement.

Kuc's argument misses the mark because he reads the warrant's first clause in isolation. We recognized long ago that a warrant's language must be read in context, such that "the 'general' tail of the search warrant will be construed so as not to defeat the 'particularity' of the main body of the warrant." Abrams, 615 F.2d at 547 (citing Andresen v. Maryland, 427 U.S. 463, 480-81 (1976)). In Andresen, the Supreme Court rejected the claim that an otherwise valid warrant was rendered impermissibly general by the addition of the phrase "together with other fruits, instrumentalities, and evidence of crime at this (time unknown)," because the phrase had to be read in context and together with the warrant's "lengthy list of specified and particular items to be seized." 427 U.S. at 479-81. Similarly, in United States v. Bucuvalas, 970 F.2d 937 (1st Cir. 1992), abrogated on other grounds by Cleveland v. United States, 531 U.S. 12, 18 (2000), this court upheld a warrant that authorized the seizure of "[r]ecords, documents, notes and physical objects which constitute evidence of and instrumentalities of [four specified crimes], and, in particular, records, documents, notes and physical objects [evidencing specified criminal acts by the suspect]." Id. at 941 n.5. We recognized that the language "and, in particular," simply served to transition from the first clause, which identified the

criminal offenses that the evidence was expected to establish, to the second clause, which imposed more specific search constraints. Id. at 942 ("[B]ut for the search constraints in the second clause we might agree that the particularity requirement of the Fourth Amendment would not have been met. In light of the specific types of items described in the second clause, however, the warrant met the Fourth Amendment particularity requirement.").

Here, as in Bucuvalas, the search warrant includes a transitional phrase that connects a broad first clause, which identifies the criminal offenses that the target evidence was expected to establish, with a detailed and particularized second clause. The second clause, the particularity of which Kuc does not challenge on appeal, details the companies that Kuc was suspected of defrauding as well as the aliases, street addresses, and e-mail addresses he was believed to have used in his scheme. As in Bucuvalas, the "second clause . . . in the instant warrant tracked the allegations . . . for which probable cause was established in the accompanying affidavit." Id. The phrase "including, without limitation" is certainly not a model of precise drafting. Nevertheless, it does not make the warrant constitutionally infirm because it is a transitional phrase linking to the second, very particular clause, and it must be read in that context, as in Andresen and Bucuvalas. Thus, we agree with the district court that the "general" transitional phrase in this case should not be

-9-

construed to defeat the particularity of the main body of the warrant.

Moreover, even if we were to find that the language in this case exceeded the bounds of Bucuvalas and violated the particularity requirement of the Fourth Amendment, suppression still would not be necessary pursuant to the good faith exception to the exclusionary rule. This is because -- as the district court correctly noted -- the warrant, read comprehensively and in context, was not so "facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." United States v. Leon, 468 U.S. 897, 923 (1984). Given our holding in Bucuvalas, we cannot conclude that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23. Thus, the good faith exception to the exclusionary rule would apply.

We therefore find that the district court properly denied Kuc's motion to suppress.

## B.  The Motion for Acquittal

Kuc's second argument is that the district court erred when it denied his motion for a judgment of acquittal as to the aggravated identity theft charge. We review the denial of a motion for judgment of acquittal de novo. Valerio, 676 F.3d at 243-44 (citing United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008)). Viewing the evidence in the light most favorable to the

-10-

government and taking all reasonable inferences in the government's favor, we must ask whether "a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." Id. at 244 (quoting United States v. Hernández, 146 F.3d 30, 32 (1st Cir. 1998)).

In short, Kuc argues that the prosecution failed to prove that he unlawfully used a "means of identification" in his fraudulent scheme as described in 18 U.S.C. § 1028A(a)(1) because the use of someone's name -- without more -- cannot suffice to constitute a "means of identification." Pursuant to 18 U.S.C. § 1028A(a)(1), a person is guilty of aggravated identity theft if, in relation to any crime listed in § 1028A(c), he "knowingly . . . uses, without lawful authority, a means of identification of another person." The statute defines the term "means of identification" to mean "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any[] name, social security number, [or] date of birth." Id. at § 1028(d)(7)(A). Relying on a Fourth Circuit decision, Kuc argues that "means of identification" includes only the use of information that "identifies a specific individual," and contends that, because many people share the same name, a name alone is rarely sufficiently unique to identify a specific person. See United States v. Mitchell, 518 F.3d 230, 234 (4th Cir. 2008). Therefore, Kuc concludes that his use of Samuel's

-11-

name alone to receive stolen computer parts did not qualify as using a "means of identification" because Samuel's name is not sufficiently unique to identify him as a specific individual.

We need not reach the merits of Kuc's statutory argument. Even assuming that the phrase "means of identification" requires the sum total of the identifying pieces of information to identify a specific individual, Kuc's use of Samuel's identifying information meets that standard. Kuc did not, as he argues, only use Samuel's name. In reality, he used Samuel's full name in addition to the name of Samuel's company to ship stolen computer parts to multiple addresses.[3] Together, the two pieces of identifying information are sufficient to identify Samuel as a specific individual and thus to support the aggravated identity theft conviction.

Viewing the evidence in the light most favorable to the government, a rational factfinder could easily find that the prosecution successfully proved beyond a reasonable doubt that Kuc used a "means of identification" as required by 18 U.S.C.

---

[3] Kuc argues that we should not consider evidence of computer parts that were sent to 42 Union Street in Samuel's name because they were sent with Samuel's permission. We view this claim skeptically, noting that Samuel certainly did not give permission for his name to be used to perpetuate a fraudulent scheme. Even if we do as Kuc asks, however, there were at least two documented instances in which Kuc used Samuel's personal name, "Francisco Samuel" together with Samuel's company name, "Abacus Software," to receive packages at an address other than 42 Union Street.

§ 1028A(a)(1). Therefore, we affirm the district court's denial of Kuc's motion for a judgment of acquittal.

**Affirmed.**