UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>    v.<br><br>**MATTHEW J. KUC,**<br><br>    **Defendant** | Crim. No. 11-CR-10014-DPW |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255**

Defendant's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 should be denied without an evidentiary hearing.

**I.  TIMELINESS**

The motion is timely.

**II.  PRIOR POST-CONVICTION MOTIONS**

The United States is unaware of any post-conviction motions filed by Defendant other than the present motion and his appeal to the First Circuit.

**III.  VICTIMS**

Defendant's victims include the computer companies listed on the judgment (Dell, Inc.; Lenovo Group Limited; Hewlett-Packard Company; and APC) and the individual who was Defendant's target of identity fraud (Francisco Samuel).

**IV.  FACTS**

Defendant defrauded computer companies by pretending to have deficient computer parts, persuading the companies to replace those parts under the parts' warranties, selling the replaced parts, pocketing the profit, and failing to return the deficient parts to the companies (as

required and promised) because he never had them in the first place. When the computer companies caught on, he fooled them by using a variety of addresses and address variations, corporate name aliases, and individual name aliases, including those of people he knew.

Defendant was charged by complaint on December 14, 2010, and then indicted on January 19, 2011, on charges of wire fraud and receiving stolen property in interstate commerce. On June 8, 2011, Defendant was charged in a superseding indictment, which essentially added one charge of aggravated identity theft with its mandatory two-year sentence to be served consecutive to any sentence on the other charges.

Defendant was represented by Robert Sheketoff, a well-respected defense attorney who has decades of experience in representing criminal defendants at the state and federal levels.

Throughout the case, Defendant was uninterested in a plea. Mr. Sheketoff acknowledged this at a pretrial conference. When the Court asked whether Defendant anticipated standing trial or would instead plead guilty, Pretrial Conf. & Mot. H'g Tr. at 5:6-7 (Mar. 12, 2012) (Dkt. # 100), Mr. Sheketoff answered candidly that he and Defendant had discussed the idea of pleading at length and that Defendant had no interest in pleading: "Your Honor, I have had long discussions with my client about this, and the Government, even before they superseded their most recent superseding indictment, had suggested that this would be a good time to reach a bargain, if we could. He insists that he wants a trial. I have given up trying to read the tea leaves with any real certainty, but I do believe this is a real trial." *Id.* at 5:19-25.

Consequently, the United States "suggested" the idea of a plea, as Mr. Sheketoff conceded, but never presented Defendant with a formal offer.

Shortly before trial, Defendant showed the FBI computer equipment that he had altered in order to establish or bolster an unfounded trial defense. This was, the Court concluded, an

attempt to obstruct justice. Day Two of Sentencing Hearing Tr. at 5:4-6:11 (Dec. 3, 2012) (Dkt. # 117).

Defendant stood trial and was convicted on all counts submitted to the jury. (Count 3 had been dismissed before trial.)

Right after his conviction, the United States moved to revoke Defendant's bail, in part because he had renewed his fraud while on pretrial release. Defendant promised to provide documentation the next day establishing that he had not renewed the fraud. He failed to provide that documentation, however, and was therefore remanded into custody. *See* Hearing on Bail Revocation Tr. at 3:8-22 (June 29, 2012) (Dkt. # 115).

Having found that Defendant had renewed the fraud and attempted to obstruct justice, the Court sentenced Defendant to 96 months of imprisonment, 36 months of supervised release to follow, $1,917,389.08 in restitution, and forfeiture of Defendant's Lamborghini, his Porsche, and thousands of dollars from his financial accounts. *See* Judgment (Dec. 3, 2012) (Dkt. # 92).

Defendant appealed on two grounds: the denial of his motions to suppress evidence and to acquit on the charge of aggravated identity theft. *See United States v. Kuc,* 737 F.3d 129, 132 (1st Cir. 2013) (summarizing claims on appeal). The First Circuit denied the appeal. Defendant did not petition for rehearing *en banc* or petition for certiorari to the Supreme Court.

## V.    ARGUMENT

Defendant's motion for relief under 28 U.S.C. § 2255 asserts three basic claims: that he was offered a plea deal he would have accepted had he been informed of it by Mr. Sheketoff; that he did not know what was in the PSR and the Court failed to ensure that he did; and that the Court miscalculated his sentencing guidelines' estimate of loss.

All of Defendant's claims were procedurally defaulted at the trial and appellate level. Most, if not all, are also not cognizable upon review under 28 U.S.C. § 2255. And even were they preserved and cognizable, they are at odds with the record.

**A.     Claims Under *Frye***

Defendant claims that his sentence and conviction should be vacated because the United States purportedly gave Mr. Sheketoff a plea agreement or plea offer, that Mr. Sheketoff never communicated these to him, and that he would have taken them had he known about them. *See* Declaration of Matthew J. Kuc ¶¶ 2-4.[1] He therefore asks for his conviction and sentence to be vacated under *Missouri v. Frye*, 132 S. Ct. 1399 (2012).

In *Frye*, the Supreme Court decided that a defense attorney's failure to convey a formal plea offer to his client could constitute ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Frye*, 132 S. Ct. at 1408-09. *Strickland* established a two-prong test for determining whether a defendant is entitled to habeas relief on a claim of ineffective assistance of counsel: (1) whether counsel's performance fell below an objective standard of reasonableness, and (2) if so, whether prejudice resulted, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-89. Applying this general standard to the realm of plea offers, the Court held with respect to *Strickland*'s first requirement (counsel's

---

[1] Defendant's filed declaration is unsigned, undated, and not made subject to the pains and penalties of perjury. *See* Declaration of Matthew J. Kuc at 2 ("I CERTIFY that I have read the foregoing Declaration which is true and accurate to the best of my knowledge and belief.") This declaration does not meet the requirements of 28 U.S.C. § 1746, and, because the declaration is made by Defendant about facts supposedly within his knowledge, should not be accepted as representations of Defendant's trial, appellate, or § 2255 counsel. As a precaution, the United States treats these allegations as if they had been made in a more reliable form.

reasonable performance) that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S. Ct. at 1408. The Court held with respect to *Strickland*'s second requirement (prejudice) that "[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Id.* at 1409.

Defendant's *Frye* claim must be rejected because it was procedurally defaulted. Even were the default excused, the claim lacks merit because the United States never made Defendant a plea offer; Mr. Sheketoff discussed the possibility of a plea with him thoroughly; and Defendant would have rejected a plea because he always intended prove his innocence (even by falsifying evidence) at trial.

### 1. Defendant's *Frye* Claim is Procedurally Defaulted

Defendant procedurally defaulted by failing to raise his *Frye* claim before filing this petition. "Collateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by failing to raise the claim in a timely manner at trial or on direct appeal." *Bucci v. United States,* 662 F.3d 18, 27 (1st Cir. 2011) (citations, quotation marks, and alterations omitted), *cert. denied,* 133 S. Ct. 277 (2012). Defendant never raised his purported *Frye* claim with this Court or the First Circuit. *See Kuc,* 737 F.3d at 132 (identifying appellate claims as denials of motion to suppress and motion to acquit on the aggravated identity theft charge). Consequently, this claim is procedurally defaulted. Because Defendant asserts no reason to excuse the default, this claim must be rejected.

## 2. *Frye* Does Not Apply, Because the United States Never Made a Formal Plea Offer

Even if Defendant had preserved his *Frye* claim, the claim must be rejected because the United States never made a formal plea offer.

*Frye* gives a defendant relief only if the government made a "formal offer[]." *E.g., Frye*, 132 S. Ct. at 1408 ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). *Frye* carefully confines itself to formal offers. If a mere informal offer sufficed, a defendant might abuse the system with a "late, frivolous, or fabricated claim[]," *id.* at 1408: "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Id.* at 1409. The courts have, therefore, rejected *Frye* claims when the defendant could point only to an informal proposal or to preparatory negotiations. *E.g., Ramirez v. United States,* 751 F.3d 604, 607 (8th Cir. 2014) (2-1) ("[T]he district court distinguished *Frye* by noting that the government never extended Ramirez a formal plea offer."); *id.* at 608 ("The district court correctly concluded that the government never extended Ramirez a formal plea offer because the government merely expressed an interest in negotiating."); *Merzbacher v. Shearin*, 706 F.3d 356, 359-61, 369-70 (4th Cir.) (denying defendant's *Frye* claims despite evidence of substantial informal plea discussions about a 10-year sentence instead of the two life sentences defendant received after trial, because the discussions were informal and left significant questions unresolved, including which counts the plea deal would cover, and whether it would be an *Alford* plea, which prevented finding a reasonable probability that the plea deal would ultimately have been completed and entered), *cert. denied*, 134 S. Ct. 71 (2013).

Here, *Frye* gives Defendant no help because the United States never gave trial counsel a formal offer. The United States occasionally asked Mr. Sheketoff about Defendant's interest in a plea. On one or more occasions, the United States suggested that Defendant consider pleading before a superseding indictment added a charge of aggravated identity theft, with its mandatory on-and-after time. Mr. Sheketoff confirmed this on the record. As cited above, at a pretrial conference held a few months before trial, Mr. Sheketoff answered the question of whether Defendant would likely stand trial or plead guilty with, "Your Honor, I have had long discussions with my client about this, and the Government, even before they superseded their most recent superseding indictment, had *suggested* that this would be a good time to reach a bargain, if we could." Pretrial Conf. & Mot. H'g Tr. at 5:19-22 (Mar. 12, 2012) (Dkt. # 100) (emphasis added). A mere suggestion that a plea might benefit a defendant is far from the formal plea offer that triggers *Frye*.

Defendant's self-serving claims that the United States gave Mr. Sheketoff a plea agreement or plea offer give him no help. To start, he has filed no purported plea agreement. "While no hard-and-fast rule exists, *Frye* made clear that the presence of a writing is a crucial fact when determining whether a formal plea offer has been tendered by the Government." *United States v. Petters,* 986 F. Supp. 2d 1077, 1082 (D. Minn. 2013). Moreover, Defendant has not even tried to document any of the purported offer's terms. "[T]he fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." *Frye,* 132 S. Ct. at 1409. Defendant has described no specifics at all: not the charges he supposedly would have pleaded to, not the parties' supposed sentencing recommendations, not the agreed-upon restitution, and not which of Defendant's considerable

assets he would have forfeited. For there to have been a formal agreement, these terms had to have been resolved. *See Petters,* 986 F. Supp. 2d at 1082 (finding no formal offer because "[t]here was no discussion of the charges to which Petters would plead guilty, no discussion of the factual basis for such a guilty plea, and no discussion of the amount of restitution to be ordered or which of Petters's assets would be subject to forfeiture — often contentious subjects in fraud cases. Simply put, there was no discussion of a myriad of issues typically part of plea agreements.") (footnote omitted).

And even if Defendant's bald assertion of a plea agreement were sufficiently specific, it is not credible, not in light of Mr. Sheketoff's representations to the Court. Defendant's claims are unsworn and unsigned. And even if they were sworn and signed, Defendant's oath would be worth little. Defendant squandered his credibility years ago. He defrauded companies for years. He misused his friend's identity. He committed fraud while on pretrial release. And he tried to obstruct justice with false evidence. His word cannot stand up to the evidence to the contrary.

His claims for relief under *Frye* should be rejected for lack of a specific, formal plea agreement.

### 3. Mr. Sheketoff Communicated the United States' Plea Suggestion to Defendant

Even if the government's suggestion of a guilty plea — with no details of what a plea agreement's essential terms might be — sufficed under *Frye*, Defendant would still have no claim because Mr. Sheketoff discussed the government's plea suggestion to Defendant at length. Mr. Sheketoff explained this on the record, stating that he had "had long discussions with my client about this," that is, a plea. Pretrial Conf. & Mot. H'g Tr. at 5:19-25 (Mar. 12, 2012) (Dkt. # 100). In other words, Mr. Sheketoff did exactly what *Frye* required, and just as you would expect of an attorney of Mr. Sheketoff's caliber. Mr. Sheketoff's representations to the Court

should be credited, while Defendant's self-serving statements to the contrary should be discredited in their entirety. *See Petters,* 986 F. Supp. 2d at 1085 (discrediting defendant's testimony that his lawyers had failed to communicate a plea offer to him, in part because "it would strain logic to the extreme to conclude that well-versed criminal defense lawyers would ignore their long-established ethical obligations and keep [the defendant] out of the loop").

### 4. Defendant Would Never Have Accepted a Plea Agreement

Even if the United States had made Defendant a formal plea offer, or even if the parties' vague discussions triggered a duty of communication that Mr. Sheketoff shirked (despite his representations to the contrary), Defendant has no *Frye* claim because he cannot show that he would have taken the deal supposedly offered, or any deal at all.

To prevail, Defendant must prove not only that there was a formal offer, but also that he would have taken it rather than go to trial. *Frye*, 132 S. Ct. at 1409 ("To show prejudice . . ., defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.")

This trips Defendant up, because he was always intent on proving his supposed innocence at trial. "A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." *Sanders v. United States,* 341 F.3d 720, 723 (8th Cir. 2003). *See also Petters*, 986 F. Supp. 2d at 1088 (quoting *Sanders* while rejecting as incredible an unrepentant defendant's claim that he would have accepted plea offer had he been told of it).

Defendant's intent to prove his innocence is just what Mr. Sheketoff told the Court shortly before trial. Pretrial Conf. & Mot. H'g Tr. at 5:22-23 (Mar. 12, 2012) (Dkt. # 100) ("He

9

insists that he wants a trial."). And the proof is in the pudding. To have taken a plea deal, Defendant would have had to have admitted his guilt. But he could not bring himself to say those words. He did not admit guilt in his post-conviction/pre-sentence letter to the Court, which claimed, "I have never purposely intended to commit a crime[,] nor have I ever intended to be in this position with the law." But fraud is a crime of specific intent: by claiming that he did not purposely intend to commit a crime, Defendant essentially disputed his guilt and the jury's verdict.

And Defendant was so confident of his ability to beat the charges that he resumed committing fraud before trial and tried to fob off some adulterated evidence.

Defendant's insistence on his innocence and confidence in his ability to beat the system demonstrate his complete lack of interest in a plea. His insistence on obtaining a verdict of not guilty, even at the cost of obstructing justice, demonstrate that he would not accept any deal.

### 5. Conclusion

Defendant's *Frye* claim therefore fails at every level: it was procedurally defaulted, there was no formal plea offer, Mr. Sheketoff informed Defendant about what nascent plea discussions there were, Defendant rejected the idea of a plea, and never had any intent of pleading guilty.

## B. CLAIMS UNDER FED. R. CRIM. P. 32(i)(1)(A)

The Court should also reject Defendant's claim of a purported violation of Federal Rule of Criminal Procedure 32(i)(1)(A), which requires the sentencing court to "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report."

This claim must be denied because it is not cognizable under 28 U.S.C. § 2255, it was procedurally defaulted, and his purported ignorance of the PSR's contents contradicts the record.

### 1. The Purported Error Is Not Cognizable Under 28 U.S.C. § 2255

A court's failure to ask the defendant whether he read the PSR is not cognizable under 28 U.S.C. § 2255, because the purported error is not jurisdictional or constitutional in nature. *See* 28 U.S.C. § 2255(a) (limiting claims to those jurisdictional or constitutional in nature or involving a sentence greater than the maximum allowed); *Alves v. United States*, 70 F.3d 110, 1994 WL 866085, at *1 (table) (per curiam) (1st Cir. 1994) ("[Defendant's] complaint regarding the Fed. R. Crim. P. 32(a)(1) [former version of current Rule 32(i)(1)(A)] colloquy does not appear cognizable in a § 2255 motion."); *Blanco v. United States*, 995 F.2d 1061, 1993 WL 193537, at *3 (1st Cir. 1993) (table) (per curiam) (holding purported violation of then-current version of Fed. R. Crim. 32(i)(1)(A) not cognizable under 28 U.S.C. § 2255 except possibly in the context of other aggravating circumstances); *Orta v. United States,* 719 F. Supp. 866, 869 (E.D. Mo. 1989) (holding that if evidence indicates that defendant's attorney read the PSR and the only claim is that defendant did not read it and the court did not question him about it, the claim is not cognizable under 28 U.S.C. § 2255).

Defendant's citation to *United States v. Ortiz-Garcia*, 665 F.3d 279 (1st Cir. 2011), for the proposition that a violation of Fed R. Crim. 32(i)(1)(A) requires resentencing is inapposite. *Ortiz-Garcia* was decided on appeal, not on § 2255 review.

### 2. The Claim Was Procedurally Defaulted

The claim should also be denied because Defendant procedurally defaulted by failing to raise it with this Court during sentencing or the First Circuit on appeal.

### 3. Defendant Has Alleged No Cause for the Procedural Default or Prejudice from the Purported Violation

The claim should also be denied because Defendant has demonstrated no cause for his procedural default and no prejudice as a result of the purported violation. "If a petitioner's claim

has procedurally defaulted, collateral review under § 2255 will be available only if the petitioner can show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." *Bucci,* 662 F.3d at 27 (citation omitted).

Here, Defendant has alleged no real cause for the default or prejudice from the error. At best, he has hinted that the cause for the default was the ineffective assistance of counsel. But he does not explain how. To claim that his defense and appellate counsel rendered ineffective assistance, Defendant must meet *Strickland*'s "rigorous standard" of showing both that his counsel's performance fell below an objective standard of reasonableness, and that but for the error, the outcome would likely have been different. He cannot do so. Mr. Sheketoff has decades of experience, tried the case vigorously, cross-examined the government's witnesses at length, raised a number of objections to the PSR, argued guideline issues at both sentencing hearing days, asked for continuances when necessary to develop a point, and spent considerable time at sentencing discussing the 18 U.S.C. § 3553(a) factors that should shape Defendant's sentence. Defendant's appellate counsel pursued a vigorous appeal of the case's main legal issues, a challenge to the search warrant and a challenge to the aggravated identity theft charge. He likely decided against challenging to the Court's failure to ask Defendant about the PSR because all PSR-related questions were discussed fully and decided conclusively against Defendant, and Defendant attended these discussions. Neither Mr. Sheketoff's nor appellate counsel's performance fell below an objective standard of reasonableness.

Nor has Defendant demonstrated that but for the error, the outcome would likely have been different. To demonstrate that the outcome would likely have been different, Defendant must identify the specific PSR objections he would have made had he reviewed the PSR, and how they would have changed his sentence. *See United States v. Espinola,* 242 Fed. App'x 709,

711 (1st Cir. 2013) (per curiam) (holding in appeal of sentence that if defendant failed to show prejudice warranting relief from violation of Rule 32(i)(1)(A), remand to district court would be "an exercise in futility in order to obtain the same sentence") (citation and internal quotation marks omitted), *vacated on other grounds,* 552 U.S. 1240 (2008); *United States v. Vargas*, 469 F. Supp. 2d 752, 776 (D.N.D. 2007) (holding that defendant's assertion in a § 2255 motion of a Rule 32(i)(1)(A) violation must fail because he "failed to establish that the results of the sentencing hearing would have been different absent his counsel's alleged error"). But Defendant has not done so. His unsigned declaration states conclusorily, "had I had the opportunity to review the report in a timely way, I would have demanded that he file additional objections." Decl. of Matthew Kuc ¶ 9. He makes no mention of what those additional objections would have been or how they would have changed his sentence for the better. That is likely because there weren't any other objections worth making. Any legal objections were adequately and completely covered by trial counsel. And it bears repeating that if Defendant had supplemented Mr. Sheketoff's PSR objections with his own, they would likely have been rejected because Defendant had little credibility.

Having failed to show that the results of the sentencing hearing or the appeal would have been different absent the alleged errors, this claim must fail.

    **4.**    **The Claim of a Violation Belies the Record Below**

Finally, even were Defendant's claim cognizable, it would be contradicted by the record below. We grant Defendant's premises, that the Court did not explicitly ask Defendant or his trial counsel whether they had read and discussed the PSR, and that doing so would have been the better practice. *United States v. DeLeon*, 704 F.3d 189, 196 (1st Cir.), *cert. denied,* 134 S. Ct. 63 (2013). But "'if it is abundantly clear from the sentencing hearing that both defendant and


his counsel are familiar with the report, a new sentencing hearing will not be mandated, even if the court failed to directly inquire whether the defendant had an opportunity to review the report.'" *DeLeon*, 704 F.3d at 196 (quoting *United States v. Manrique,* 959 F.2d 1155, 1157-58 (1st Cir. 1992)).

Here it is abundantly clear that both Defendant and Mr. Sheketoff were familiar with the PSR. Mr. Sheketoff's review of the PSR is evidenced by his multiple objections to the PSR in writing, his sentencing memorandum, and his discussion of the PSR and guideline issues at both days of the sentencing hearing. Defendant's familiarity with the PSR is evidenced by his presence at both sentencing hearings during extensive discussions of the PSR. His familiarity is also evidenced by his objection to PSR ¶ 80. Paragraph 80 said that Defendant had failed to tell Probation that he had served as the president and director of KD Group until the company dissolved in mid-2012; Defendant objected, explaining that when a business partner left KD Group, "the defendant kept going as Total Asset Recovery." *See* PSR at 34 (setting forth Defendant's Objection # 14 to PSR ¶ 80). Probation responded that Defendant had not mentioned KD Group or its connection to Total Asset Recovery during his presentence interview, that Total Asset Recovery was a sole proprietorship, and that the two companies' connection was not clear from any records. *Id.* Consequently, the information for Defendant's PSR objection that connected the two companies must have come from the sole proprietor of Total Asset Recovery, the Defendant himself. Finally, Defendant's familiarity with the PSR is evidenced by his having told the Court in a letter dated November 23, 2013, that "I have had the opportunity to review the Pre Sentencing Memorandum from the Prosecution related to my case. It is very important for me to express how I feel about it." *See* Dkt. # 87. That memorandum cited the PSR at least 11 times. *See* Dkt. # 79. Defendant was therefore familiar with the PSR.

Given Defendant's provision of information to object to the PSR, Defendant's presence at repeated discussions of the PSR at both sentencing hearings, Defendant's admitted familiarity with the government's sentencing memorandum, and the government's repeated citation to the PSR in its sentencing memorandum, his recent suggestion that he was unfamiliar with the PSR begs disbelief.

C.   **DEFENDANT'S LOSS-BASED CLAIMS MUST BE REJECTED BECAUSE THEY ARE NOT COGNIZABLE ON § 2255 REVIEW, WERE PROCEDURALLY DEFAULTED, UNSUPPORTED BY EVIDENCE, AND IN ANY EVENT WRONG**

Defendant's third and fourth claims object to the Court's method of calculating the sentencing guidelines, specifically the loss due to the fraud. These claims must be rejected because they are not cognizable on § 2255 review, were procedurally defaulted, unsupported by any evidence, and are in any event wrong.

   1.   **Guideline Calculation Quibbles are Generally Not Cognizable on § 2255 Review**

For Defendant's argument about his sentencing guidelines calculations to be cognizable on § 2255 review, he must demonstrate that the error is "a fundamental defect which inherently results in a complete miscarriage of justice, and . . . presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Damon v. United States,* 732 F.3d 1, 3 (1st Cir. 2013) (citation, internal quotation marks, and alterations omitted) (setting forth standard for non-constitutional, non-jurisdictional claims under 28 U.S.C. § 2255), *cert. denied,* 134 S. Ct. 1328 (2014). A routine error in calculating the sentencing guidelines is not normally "a fundamental defect" and a "complete miscarriage of justice." *Cuevas v. United States,* 2014 WL 1056930 at *3 (D. Mass. Mar. 13, 2014) (Stearns, J.) (noting that although *Damon* leaves open the question of whether an erroneous application of the sentencing

15

guidelines that is not procedurally defaulted could constitute a complete miscarriage of justice, most circuit courts have agreed with the earlier First Circuit opinion in *Cofske v. United States,* 290 F.3d 437, 441 (1st Cir. 2002), that "a guideline violation alone is not automatically a basis for relief under 28 U.S.C. § 2255").

Defendant's guideline quibble here does not state a fundamental defect constituting a miscarriage of justice. The dispute is about how much the loss was, that is, how much the equipment he obtained by fraud was worth. The sentencing guidelines take a flexible and pragmatic approach: "The court need only make a reasonable estimate of the loss. . . . [¶] The estimate of the loss shall be based on available information, taking into account, as appropriate and practicable under the circumstances, factors such as the following . . . ." U.S.S.G. § 2B1.1 comment. (n.3(C)) (2012). Those factors include the property's "fair market value . . . or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property," *id.* comment. (n.3(C)(i)), and "[m]ore general factors, such as the scope and duration of the offense and revenues generated by similar operations," *id.* comment. (n.3(C)(vi)). If the loss cannot be reasonably determined, the court can use the gain. *Id.* comment. (n.3(B)). The guidelines note that when deciding what the loss is, "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence," and therefore "the [sentencing] court's loss determination is entitled to appropriate deference." *Id.* comment. (n.3(C)).

In the context of this flexible, pragmatic approach that gives the sentencing court considerable discretion and deference, it would be remarkable if the sentencing court's choice of one measure of loss over another measure, even in error, would result in a complete miscarriage of justice within § 2255's purview.

Here, the United States gave the Court several reasonable ways to measure the loss. The first was the total retail price of the stolen goods, which totaled about $3,596,379. *See* PSR ¶ 25. The second was the more conservative replacement cost, which totaled about $1,917,389. *See* PSR ¶¶ 25-26. The third was the even more conservative amount that Mr. Kuc made on his illicit sales, which totaled about $1,300,000. *See* PSR ¶ 24. The United States suggested that the Court use the more conservative estimate of loss between $1,000,000 and $2,500,000, rather than the most aggressive measure, the retail cost, which was between $2,500,000 and $7,000,000 and two offense levels higher. *See* PSR ¶ 27.

Defendant vaguely suggested that there should be a discount off even the replacement cost, because the parts that the victims sent him were refurbished and supposedly not all the parts that he sold were obtained fraudulently. But Defendant steadfastly failed to support these suggestions with any evidence, and he eventually abandoned the arguments. *See* Day One of Sentencing Hearing Tr. at 3:17-20 (Oct. 26, 2012) (conceding that "even though I made objections to things like loss, the real objections that I hope to, perhaps, persuade you on are only two, and the first is obstruction of justice"); *id.* at 7:12-11:18 (discussing loss theories); *id.* at 11:10-18 (court's admonition that government's estimates of loss were unrebutted and if Defendant wanted to contest loss, he would need to provide evidence); [Defendant's] Memorandum re: Guideline Issues (Nov. 19, 2012) (Dkt. # 85) (omitting discussion of loss); Day Two of Sentencing Hearing Tr. at 6:12-15 (Dec. 3, 2012) (Mr. Sheketoff confirming that Defendant was not challenging the PSR's loss calculation).

The Court ultimately accepted the government's and PSR's estimate that the loss was between $1,000,000 and $2,500,000, finding this "a conservative estimate of loss, not the highest

estimate of loss, which would have gone up to $3 million and added yet another two points [to the offense level]." Day Two of Sentencing Hearing Tr. at 17:15-19.

Even Defendant's latest filing offers nothing more than speculation that a lower estimate might exist and that it might change his guidelines range. *See* Memorandum of Law in Support of Motion to Vacate Conviction and Sentence Under 22 USC §2255 at 11-12 (stating that if the Court had reduced the government's loss figure to take into account hypothetical and unspecified discounts, "Defendant fully *anticipates* that doing so would more than halve the loss figure in this case[,] resulting in a one-point reduction of Mr. Kuc's Offense Level and up to a 16-month reduction of his sentence") (emphasis added). Speculation does not cut it.

In light of the guidelines' flexibility and pragmatism in selecting a loss figure, the evidence available in the record, the Court's choice of the most conservative loss figure available on the record, Defendant's failure to specify a non-speculative alternative, and Defendant's dropping the argument at sentencing and on appeal, there are no grounds to hold that any supposed error was a complete miscarriage of justice.

Defendant's loss-related arguments must therefore be rejected.

### 2. Defendant Procedurally Defaulted His Guideline Claims

Even if Defendant's loss-related arguments were theoretically cognizable, they must be rejected because they were procedurally defaulted. As discussed above, Defendant steadfastly failed to provide the Court any evidence for a lower loss figure and eventually abandoned these arguments at sentencing and on appeal. This is procedural default.

Defendant ascribes the appellate default to ineffective assistance of appellate counsel. But Defendant has a further problem: he has not justified trial counsel's default or explained

why this was not an acceptable strategic decision. Consequently, Defendant has given no cause for the default at sentencing and therefore it cannot be rescued.

### 3. The Court Decided the Guideline Dispute, and Decided It Correctly

Even if Defendant's loss-related claims had been preserved, they must still be rejected.

His first claim, that the Court did not recognize that the loss was disputed and therefore failed to settle the dispute, makes no sense. As demonstrated above, on the last day of sentencing, the Court noted that the loss had been contested in the past, and Defendant confirmed that the loss was no longer in dispute. *See* Day Two of Sentencing Hearing Tr. at 6:12-15 (Dec. 3, 2012). Consequently, the Court had no disputed matter to decide.

The second claim, that the Court miscalculated the loss as a matter of law or fact, also makes no sense. The Court chose the lowest loss figure available with any basis in the record. Defendant offered no evidence for a lower figure. Even now, Defendant offers nothing but speculation that a lower figure could be justified. *See* Memorandum of Law in Support of Motion to Vacate Conviction and Sentence Under 22 USC §2255 at 11-12 ("Defendant fully *anticipates* that doing so would more than halve the loss figure in this case[,] resulting in a one-point reduction of Mr. Kuc's Offense Level and up to a 16-month reduction of his sentence") (emphasis added).

Consequently, Defendant has failed to show any prejudice from the Court's decision or any indication that reconsideration of these matters would yield a different result.

## VI. NO NEED FOR AN EVIDENTIARY HEARING

This motion does not require an evidentiary hearing. "[T]he petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether the petitioner has carried the devoir of persuasion in this respect, the court . . . need not give weight to conclusory

allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) (citations omitted). "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *Id.* (citation omitted). A hearing is also unnecessary "when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." *Moran v. Hogan,* 494 F.2d 1220, 1222 (1st Cir. 1974).

This case presents these circumstances. An evidentiary hearing is unnecessary.

                Respectfully submitted,

                CARMEN M. ORTIZ
                UNITED STATES ATTORNEY

By:   */s/ Scott L. Garland*
       SCOTT L. GARLAND
       ASSISTANT UNITED STATES ATTORNEY

**CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                */s/ Scott L. Garland*
                SCOTT L. GARLAND
                ASSISTANT UNITED STATES ATTORNEY

Date: December 19, 2014